Argued at Pendleton May 8, affirmed as to defendants Baker County and Bent Landreth and remanded as to defendants Kolb September 24, 1929.

F. C. VAUGHAN v. ADAM KOLB ET AL.

(280 Pac. 518.)

For appellant there was a brief over the name of *Messrs. Nichols, Hallock & Donald,* with an oral argument by *Mr. Blaine Hallock.*

For respondents Adam Kolb and Amanda Kolb there was a brief and oral argument by *Mr. Frank C. McColloch.*

For respondent City of Baker there was a brief over the name of *Messrs. Strayer & Strayer,* with an oral argument by *Mr. M. B. Strayer.*

For respondent Bent Landreth there was a brief over the name of *Mr. Leland S. Finch.*

BEAN, J.—The right of the City of Baker to impound the waters appropriated by it in sufficient quantities for the present and future domestic use of its inhabitants is unquestioned in this suit. The city is not a necessary party to this suit and will be deemed a nominal party. The same may be said of the water-master.

The city has never abandoned any part of its water right. We are indebted to counsel for the city for an able brief. It appears from the complaint and seems to be agreed by all of the parties interested, that a part of the water of the city impounded in its reservoir is allowed to overflow and escape; that the city has no further interest in such excess or overflow water, except to see that it does no damage to the property of others.

The question arises, what is the status of such overflow or waste water. In order not to confound or connect the word "abandoned" with the water right of the city we will refer to such overflow water as "released" or "waste" water. Of course it is impossible for the city to impound the exact amount of water necessary for its use from day to day and unavoidably there is some overflow which is properly termed waste.

■ We will refer to a few general principles of law somewhat bearing upon the case. After water has been appropriated and diverted from a natural stream into ditches, canals or other artificial works, it becomes personal property and cannot be appropriated from such works. This is upon the theory that it is personal property and as such belongs to

the appropriator from the natural stream: 2 Kinney (2 ed.), p. 1153, § 662. Treating the alienation of its water rights by a municipality it is stated in 3 Kinney on Water Rights (2 ed.), page 2597, Section 1441, as follows:

"It is the general rule of law that a city having once acquired a title to water rights or other property, and having dedicated them to public use, has no power, without special authority conferred by statute, to sell, lease, or otherwise dispose of such rights to others."

This based upon the principle that a city having the power to "purchase, receive, hold, sell, lease, convey and dispose of property, real and personal, for the benefit of the city," has no authority, express or implied, to convey or otherwise transfer, property used by the public or dedicated to a public use. The control and management of property so dedicated to the use of the people of a city is given for their benefit, not for the individual benefit of the public authorities. A city is an instrumentality created and perpetuated for the benefit of its people.

We concur in the statements in the city's brief as follows:

Water which is taken into possession and confinement becomes personal property and only specific quantities of water may be abandoned. Citing 1 Wiel on Water Rights (3 ed.), § 35; *Riverside Co.* v. *Gage*, 89 Cal. 410, 419 (26 Pac. 889); *Ball* v. *Kehl*, 95 Cal. 606, 613 (30 Pac. 780); *Dunsmuir* v. *Port Angeles Co.*, 24 Wash. 114 (63 Pac. 1065); 2 Kinney on Irrigation and Water Rights (2 ed.), pp. 1484 and 2005.

In Wiel on Water Rights (3 ed.), Volume I, Section 37, it reads as follows:

"The water taken into an artificial structure and reduced to possession is private property during the period of possession. When possession of the actual water or *corpus* has been relinquished or lost by overflow or discharge, after use, property in it ceases; the water becomes again nobody's property and re-enters the negative community, or 'belongs to the public,' just as it was before being taken into the ditch. It has no earmarks to enable its former possessor to follow it and say it is his. The specific water so discharged or escaped is abandoned; not an abandonment of a water right, but an abandonment of specific portions of water, viz., the very particles that are discharged or have escaped from control."

It is also asserted in the brief of counsel for the city that the municipality had absolute control over the disposition of its surplus water, even to the extent of selling the same for irrigation purposes. Citing Charter of City of Baker, §§ 3 and 142, subd. 35, § 3768, Or. L.; 4 McQuillin on Municipal Corporations (1 ed.), § 1799; *Overall* v. *Madisonville,* 125 Ky. 684 (102 S. W. 278, 12 L. R. A. (N. S.) 433).

In our opinion the question of the city selling water for irrigation is not involved in this case. We thus construe the complaint. The City of Baker has absolute control of the water in its reservoirs. The city has abandoned no water right.

According to the complaint it has and does release a quantity of water over the lip of its dam in which it has no further interest except to see that it does no damage to others. Such overflow water is to all intent and purpose waste water. The city may release much or little or none of such water as it sees fit, or as may be convenient for it to do, and no one can complain.

The legislature of Oregon in its wisdom has seen fit to declare the following rule in regard to waste water. Section 5797, Or. L., is as follows:

"All ditches now constructed, or hereafter to be constructed, for the purpose of utilizing the waste, spring, or seepage waters of the state, shall be governed by the same laws relating to priority of right as those ditches constructed for the purpose of utilizing the waters of running streams; provided, that the person upon whose lands the seepage or spring waters first arise, shall have the right to the use of such waters."

Waste water is defined in Kinney on Irrigation and Water Rights (2 ed), Section 322, as follows:

"Waste water may have three meanings, as follows: First, water that is actually wasted or not needed by the claimant thereto; second, water which, after it has served the purpose of the lawful claimant thereto, has been permitted to run to waste or to escape; and third, water which, from unavoidable causes, escapes from the ditches, canals, or other works of the lawful claimants."

All water from any and all sources belongs to the public: Or. L., §§ 5715, 5716.

The power of the legislature to prescribe the rules for the appropriation of water is practically unquestioned.

In 2 Kinney on Irrigation and Water Rights (2 ed.), Section 661, after criticising the rule enunciated by Mr. Commissioner KING in *Hough* v. *Porter,* 51 Or. 318, 325 (syllabus No. 63), (95 Pac. 732, 98 Pac. 1083), to the effect that—

"Where water is claimed as the "waste" waters from the farm of an adjacent water user, all the water in excess of that caused by and resulting from seepage is but the quantity diverted by such appro-

priator in excess of his needs, and accordingly in excess of the quantity to which he may be entitled and the person receiving and applying the excess to a beneficial use acquires a vested right therein, as would an appropriator of any other surplus water, the inception of which right, like that of any other appropriator, dates from the first steps taken to provide for its use,''

the text-writer states as follows:

''The better authorities hold that a claimant to waste water acquires a temporary right only to whatever water escapes from the works or lands of others, and which cannot find its way back to the natural stream from which it was taken; that such a use of the water does not carry with it the right to any specific quantity of water, nor the right to interfere with the water flowing in the ditches or works of others lawfully appropriating it, and the appropriators are under no obligation, nor have they the right to permit any specific quantity of water to be discharged as 'waste water' for his benefit.''

The criticism does not apply to that part of the holding pertinent to the case in hand. Treating of the appropriation of water from a spring which is in the same category, in the statute, as waste water, Mr. Chief Justice R. S. Bean, in *Brosnan* v. *Harris,* 39 Or. 148, at page 151 (81 Am. St. Rep. 649, 54 L. R. A. 628) declared:

''Whatever doubt may exist elsewhere upon the question, it would seem that the right to make such an appropriation of waste, spring, or seepage water finds recognition in the legislation of this state.'' (Reference to the provision of § 5797.) * *

''Under this provision there would seem to be no distinction between the right to appropriate the waters of running streams and those of springs.''

The rights of plaintiff Vaughan and defendants Kolb seem to be claimed as measured by, or affected

by, the contracts which each had with the city relating to the waste or overflow water. While we do not find many adjudications touching upon such a contract, a case in principle involving such a question is *Schulz* v. *Sweeney,* 19 Nev. 359 (11 Pac. 253, 254, 3 Am. St. Rep. 888). In that case water of a wood flume operated by a corporation for the purpose of carrying wood from the mountains to the terminus of the flume, after being thus used was there discharged. The point of discharge was upon a mountainous ridge, and the water was no longer used or claimed by the corporation. The water company for a valuable consideration leased to the defendant the water that should be discharged from the mouth of the flume during the remainder of the year. The District Court decided that the defendant acquired no rights by reason of the lease and that nothing passed by the lease because the waters were abandoned.

On appeal the Supreme Court affirmed the decree of the District Court and stated that:

"The water was discharged from the flume for the purpose of getting rid of it, and left to find its way to the natural level of the country, through the lands of others without intention to reclaim or enjoy it. Neither company undertook to exercise any control of the water after it was discharged, save to direct it to one valley or the other, and so as to do no injury to settlers along its course. These facts are conclusive evidence of an abandonment."

■ If the City of Baker merely allowed the water in its reservoir to escape as waste water with no intent of recapturing or enjoying it and allowed it to find its way to the natural level of the country, its natural destination said to be Powder River, as we understand the complaint to allege; then the city

after such water had escaped had no interest therein and could not confer any right either upon the plaintiff or defendants Kolb. The waste water was then subject to appropriation under the statute the same as any other water. The theory of the complaint seems to be that the rights of the claimants are governed to a large extent by the contracts with the city.

We do not intend to pass upon the merits or equities of the case. We think from a legal standpoint the demurrer to the complaint was properly sustained. However mingled with the allegations it seems to appear in substance as follows:

Plaintiff and his predecessor having a void contract with the city, appropriated and used a quantity of waste water for about ten years and reclaimed about 125 acres of land upon which such water was used. The Kolbs then obtained a similar contract from the city and used a portion of the surplus, and allowed other parties to use a portion thereof, and claim the right by virtue of their contract. How much of such waste water there usually is does not appear. After a time both parties made application to the state engineer for a permit to appropriate the water or a portion thereof. What share of the surplus water is used by the Kolbs is not shown.

■■ In a suit in equity involving water rights a court of equity will not adhere to a strict rule of pleading. Amendments to the pleadings in such cases should be liberally allowed: *Hough* v. *Porter, supra; In re Silvies River,* 115 Or. 27 (237 Pac. 322). Altho the right to such waste water that may be obtained for irrigation may be temporary, or rather the use of the water may be irregular and uncertain, still it may be very valuable. The

right to such waste water is much the same as the appropriation and right to water in a small stream, which during a portion of the season runs low and practically dries up. The right still exists but there is no water to be used. According to the theory evolved in Kinney on Irrigation referred to above, this is where the learned author differs from the view expressed in *Hough* v. *Porter*. We see no reason why the right to waste or spring water may not be permanent, even tho the use thereof may be interrupted, that is, the right exists to be exercised when there is water available.

With the status of the waste water from the city reservoir determined, if either of the parties desire to apply to the Circuit Court to be allowed to frame issues, so as to settle their respective rights to such water, they should be allowed to do so. For the purpose of such an application being made, the suit as between plaintiff Vaughan and defendants Adam Kolb and Amanda Kolb, will be remanded to the Circuit Court with permission for such court to entertain such an application. As to the defendants City of Baker and Bent Landreth the suit will be dismissed. The City of Baker will be allowed its costs upon this appeal. Neither of the other defendants will be awarded costs. With the addition above mentioned, the judgment of the trial court is affirmed.

AFFIRMED AS TO DEFENDANTS BAKER COUNTY AND BENT LANDRETH AND REMANDED AS TO DEFENDANTS KOLB.

RAND, ROSSMAN and MCBRIDE, JJ., concur.