Argued at Pendleton May 6, 1930; affirmed January 3, 1931

## BARKER ET AL. *v.* SONNER ET AL.
(294 P. 1053)

*Ed. R. Coulter,* of Weiser, Idaho, for appellants.
*Robert D. Lytle,* of Vale, for respondent.

ROSSMAN, J. The controversy presented by this suit submits the question whether the three plaintiffs are entitled to use the water flowing from Shepard's gulch in Malheur county or whether the defendant shall have the use of that water. Except in the early spring, when the melting snows and heavy rainfalls provide surface waters which drain into that ravine, the only flow in the gulch consists of the waste waters and seepage from the operation of the irrigation district which we shall now describe. In the year 1912 the Payette-Oregon Slope Irrigation district was organized for the purpose of serving an area of land in Malheur county situated approximately a mile south of the Snake river. Between these lands and the river is an area somewhat lower than the bench lands which comprise the irrigation district. One hundred and thirty acres of these lower level lands are owned by the plaintiffs, and the defendant is in possession of 439 acres of these same lower level lands by virtue of a contract of purchase. He also owns an adjacent tract of 40 acres which, however, are included within the irrigation district. All of the plaintiffs' land is outside of that district. Although the statement lacks precise accuracy, it will nevertheless be helpful to describe the plaintiffs' land as lying north and west of the defendant's; in other words in a general sort of way the defendant's land lies between the irrigation district and the plaintiffs'. Thus we have to the south the irrigation district, adjoining it upon the north are 439 acres possessed by

the defendant, beyond the latter's property are 130 acres owned by the plaintiffs, and immediately beyond their tract is Snake river.

Shepard's gulch is a ravine located entirely within the irrigation district; it pursues a northerly and southerly direction. As this ravine approaches the northerly boundary of the district, and especially the 40 acres lying within the district owned by the defendant, its slopes have broken away to such an extent that this forty-acre tract is quite level. Since we shall have frequent occasion to refer to this tract owned by the defendant and lying at the terminus of the ravine, we deem it advisable to state its legal description: Southeast ¼ of the northeast ¼ of section 14, township 16, south of range 47 east of W. M. Prior to the operations of the irrigation district this 40-acre tract of land consisted of productive soil; but the quantities of water placed upon the higher lands within the irrigation district to the south have caused waste and seepage waters to become deposited on this 40-acre tract until it has become so wet and alkalied that it is now partially unfit for agricultural purposes. Immediately to the north of it is another quarter of a quarter section in the possession of the defendant by virtue of his aforementioned contract of purchase. It also is receiving in part excessive quantities of water through the operations of the irrigation district. Entering the aforementioned southeast quarter of the northwest quarter, at approximately its southwest corner is the channel of Shepard's gulch. Prior to the efforts of the predecessor in title of the defendant this channel pursued an irregular course through this low flat area until it had become spread out to such an extent that its physical features could not be traced. But previous owners of this lower land dug a ditch approximately

200 feet east of the west boundary line of the aforementioned southeast quarter of the northwest quarter which confines this water to a single course, when the ditch is kept clean. After this ditch reaches the northerly line of the tract just mentioned it pursues a northwesterly direction across the southwest corner of the adjacent (to the north) quarter of a quarter section, also in the possession of the defendant, until it reaches a point just inside of the west boundary line of the tract just mentioned, whereupon it pursues a course parallel to the westerly boundary and continues north until its confluence with the river.

As previously stated the channel of Shepard's gulch prior to the operations of the irrigation district was dry at all seasons of the year except when the winter snows melt, but after the irrigation municipality was organized and after the ranchers began depositing quantities of water upon their land Shepard's gulch contained a flow of water of approximately 200 miners' inches throughout the summer time. May 11, 1916, the irrigation district passed a resolution declaring the channel of the gulch an extension of its ditches for the purpose of conveying the flow of water to lands within the district capable of utilizing the same.

In 1926 one Goul, predecessor in interest of the appellants as to 90 acres of their 130 acres of land, received a permit to appropriate 1.5 second feet of the waters of Shepard's gulch to irrigate his lands and in February, 1927, the appellants received a permit to use water from the gulch to irrigate the remaining forty acres of these lands. Some use was made of the waters in 1927, 1928 and 1929. The point of diversion mentioned in the permits was near the westerly boundary of the aforementioned northeast quarter of the north-

west quarter, being land which the defendant possesses under contract of purchase. The plaintiffs have no interest whatever in that land, and as is evident from our previous statements the ditch at that point is the property of the defendant. At the aforementioned point of diversion the plaintiffs have constructed a ditch leading in a northwesterly direction to the lands owned by them.

Prior to the institution of this suit the defendant diverted the water from this north and south ditch at a point south of the plaintiffs' point of diversion for the purpose of using it upon land owned by him. He claims the right to make this diversion and use by reason of the following circumstances: (1) ownership of a forty-acre tract within the irrigation district, (2) an alleged agreement whereby all waste waters passing down Shepard's gulch and deposited upon this land become the property of the defendant, (3) a claim of ownership to all seepage waters arising upon his land.

■■ The irrigation district was justified in availing itself of the use of the channel of Shepard's gulch as a portion of its ditches for the conveyance of water: Kinney on Irrigation and Water Rights, p. 1457.

Furthermore an appropriator is justified in recapturing waste water remaining upon his land and in applying it to a beneficial use. In fact it is said that water ''is not waste water so long as it remains upon the land of the original appropriator'': Long on Irrigation (2d Ed.), § 89, and *Burkart v. Meiberg,* 37 Colo. 187 (86 P. 98; 6 L. R. A. (N. S.) 104, 119 Am. St. Rep. 279). It would seem that an appropriator should be commended for recapturing water that has already been used by himself and applying it again in a beneficial manner. Such was apparently the purpose of the

resolution which appropriated the channel of Shepard's gulch as a part of the ditches of the irrigation district; in that manner the district took again into its possession much of its fugitive water. Thus it seems that the water which the plaintiffs claim was not in fact waste water when it entered the defendant's premises but was conveyed in a channel which was a part of the irrigation district's system of ditches.

■ The terminus of Shepard's gulch is approximately at the southerly line of the southeast 1/4 of the northwest 1/4, being the forty-acre tract of land owned by the defendant and included within the irrigation district. It is evident that that tract of land was receiving more water than it could beneficially use. In a lesser degree the same was true of the forty-acre tract immediately to the north which the defendant also possesses, under contract of purchase. The irrigation district finding itself confronted with possible claims for damages arising out of the above situation became interested in discovering a means whereby it could dispose of its surplus waters, and be relieved from any liability for damages on account of the presence upon lands of others of its seepage and waste waters. In the corporate minutes of August 6, 1912, we find: "The board of directors of the Payette-Oregon Slope Irrigation district met in regular meeting at their office at * * *. The following reports of special committees were heard and approved and ordered spread upon the minutes * * *"

Report of Waste Water Committee:

"This committee viewed the site of the waste water which flows from the low and middle ditches across lands controlled by Mr. Chaffee, and found that it would cost about $400 to carry said waste through a ditch to the river, we therefore offered to allow Mr. Chaffee to take and use said water provided he enter

into contract with the District to accept the water, assuming all responsibilities from flood damages or other causes, which he accepted, and Mr. Wyman his attorney, and also for the land company being present drew a preliminary agreement to that effect, which we signed in behalf of the District, and Mr. Chaffee signed for the Land Company, with the understanding that a formal contract would be drawn later in which the District would join.   C. P. Lattig, C. A. Barker, committee.''

The aforementioned Chaffee lands are the lands lying outside of the district which the defendant possesses under contract of purchase. Although the defendant searched for the aforementioned contract he was unable to find it. In fact there is no direct evidence that the final draft of the contract was ever executed; nevertheless there is much satisfactory evidence that the district and Chaffee effected a contract and performed its stipulations. For instance (1) ditches were dug by Chaffee so as to effect an irrigation system upon his land for the beneficial use of this water; (2) due to the failure of others to maintain these ditches and due to the presence of seepage waters in the soil a part of the Chaffee property contained such a surplus of water that its value depreciated from $45 an acre to $5 an acre, and yet no claim for damages was presented against the district; (3) when Chaffee had sold his property a similar contract was effected with a subsequent successor to his interest; and (4) the district made no effort whatever to dispose of these surplus waters nor to interfere with the action of Chaffee in using them. After carefully weighing the evidence we have concluded that it satisfactorily appears that in 1912 the irrigation district and Chaffee entered into an agreement whereby he became entitled to retain these waste waters in consideration of his release of the dis-

trict from all claims for damages. A circumstance which is persuasive is the fact that after all of the foregoing proof had been received, which incidentally disclosed that one of the plaintiffs, C. A. Barker, served upon the committee mentioned in the corporation's records, he did not refute the recitals contained in that record.

■ The plaintiffs contend, however, that if such a contract was effected it was ultra vires to the charter powers of the irrigation district, and therefore invalid. In support of this contention the plaintiffs argue that until the enactment of 1917 Session Laws, chapter 357, p. 743, irrigation districts were not authorized to supply water to lands outside of the irrigation district. We do not construe the contract between the district and Chaffee as an undertaking to supply his lands with water. The district was confronted with a situation where its operations caused water to be deposited upon these lands in defeat of its own purposes. Apparently it had no means whereby it could withhold this water, and prevent it from reaching the Chaffee ranch. The only remedy was the construction of ditches from the mouth of the gulch to the Snake river at an expense of $400. It is worthy of mention that the irrigation district did not own the land over which the ditches would pass. Such being the difficulty it agreed to permit the owner of the lower lands to utilize these waters without binding itself to supply any specific quantity. In other words if it deposited upon his land water he agreed to accept it and release the district from damage, but it did not agree to supply any water whatever. We fail to find in such an agreement any undertaking that exceeded the powers granted to an irrigation district by §§ 6178 and 6179, L. O. L. The many authorities upon which the

plaintiffs rely may be readily distinguished from the situation before us in the circumstance that the present contract is not one for supplying water to a user outside of the district.

But, if a conclusion was authorized that the above contract was ultra vires to the powers of an irrigation district in the year 1912, when it was undertaken, we believe that the district ratified the contract after 1915 Session Laws, chapter 189, § 5, and 1917 Session Laws, chapter 357, § 33, granted the necessary authority. There can be no doubt that under the authority granted by these acts the irrigation district possessed amply power to enter into the aforementioned contracts: *Butler v. City of Ashland,* 113 Or. 72 (231 P. 155); *Butler v. City of Ashland,* 113 Or. 174 (232 P. 655) and *Vaughan v. Kolb,* 130 Or. 506 (280 P. 518).

After Chaffee disposed of his title to these lands his successors pursued the same attitude toward this surplus water that he had displayed. In recent years a similar contract was effected with one Matt Watkins who held a contract for the purchase of this land. The circuit court found "that the said contract was intended by the parties to run with the title and for the benefit of the land;" the plaintiffs have presented no argument assailing this conclusion and it apparently states the real attitude of the district and of defendant's predecessors in title.

■ Hence we have a situation which discloses that the waters which the plaintiffs claim are brought to the defendant's land pursuant to a contract, or present themselves by the process of seepage; that while these waters are still upon the defendant's land in ditches owned by him the plaintiff claims a right to enter upon that land, build into it a ditch, and operate a headgate

so as to divert the water to the land owned by them; and that although the defendant proposes to put this water to a beneficial use the plaintiff insists that he must refrain from so doing in order that the plaintiffs' demands may be satisfied. The evidence discloses no easement in favor of the plaintiffs, nor the grant of any other right authorizing them to enter upon the defendant's land. There is no evidence of any prescriptive right whatever. In *Allen v. Magill,* 96 Or. 610 (189 P. 986, 190 P. 726), this court said:

"This, however, does not give anyone a right to go upon the lands of the settler without his permission, to divert the waters flowing through the same. Although the water is subject to appropriation, the right to appropriate must be exercised without trespass upon the land of another. The water may be running on its natural course and subject to appropriation, but no one can enjoy this bounty of the government unless he can get to the water. He may avail himself of the permission of the government to approach the stream on its land. He may secure by purchase or gift the consent of private owners to gain access over their lands, and by adverse possession for the statutory prescriptive period he may maintain his appropriation as against private owners over whose lands he has conducted the waters: *Caviness v. La Grande Irr. Co.,* 60 Or. 410, 420 (119 P. 731). A court of equity will not aid one who takes the water without right in the first instance, unless his possession has been continued adversely long enough to give him title by prescription."

Hence it is evident that the relief sought by the plaintiffs is unavailable.

■ The above situation leaves for disposition only the problem whether the defendant's use of this water is illegal on account of his lack of a permit from the State Engineer.

It is clear that the defendant needs no permit to use the seepage water which arises upon his own lands: § 5797, Or. L.; *Morrison v. Officer,* 48 Or. 569 (87 P. 896); Long on Irrigation (2d Ed.), § 89. The evidence does not disclose what percentage of the water in the defendant's ditches at the point of plaintiffs' diversion is seepage water which arises upon his land; but we deem it fair to assume that at least some of the desired water came there by the process of seepage as distinguished from water which flowed down the gulch.

We also believe that the defendant is entitled to the use of the waste water which comes upon his land in the above manner. We quote from *Vaughan v. Kolb,* 130 Or. 506 (280 P. 518): "After water has been appropriated and diverted from a natural stream into ditches, canals, or other artificial works, it becomes personal property and cannot be appropriated from such works. This is upon the theory that it is personal property and as such belongs to the appropriator from the natural stream."

The decree of the circuit court will be affirmed.

KELLY, J., did not participate in this opinion.