Argued at Pendleton November 1; modified December 13, 1932; rehearing denied January 24, 1933

## SIMPSON *v.* BANKOFIER ET AL.
(16 P. (2d) 632, 18 P. (2d) 814)

· *William E. Lees,* of Ontario (Robert E. Lees, of Ontario, on the brief), for appellant.

*M. A. Briggs,* of Ontario, and *Charles B. Foley,* of Burns, for respondents.

KELLY, J. It is alleged in plaintiff's complaint and admitted in the answer of appealing defendants that plaintiff is the owner of the following described land, to wit:

NE¼ SW¼ and S½ SW¼, section 23; SE¼ SE¼, section 22; W½ W½, section 26; NE¼ NE¼ and SE¼ SE¼, section 27; SW¼ SE¼ and E½ SE¼, section 33; S½ NW¼ and N½ SW¼ and NE¼, N½ SE¼ and SE¼ SW¼, section 34; W½ and SW¼ NE¼ and NW¼ SE¼, section 35; all in Twp. 40 S. All of section 3; NW¼, section 2, all in Twp. 41 south range 42, E. W. M. in Malheur county, Oregon.

In her complaint, among other things, plaintiff also alleges:

"That Ten Mile Creek is a stream flowing from its source in a southwesterly direction and onto the lands of plaintiff; that on July 31, 1886, the father and predecessor in interest of plaintiff, John N. Vance, filed his Notice of Claim to 1500 inches of the waters of said Ten Mile Creek, which Notice of Claim was filed for record July 31, 1886, and is recorded in Book 'A' page 127, Record of Water Rights for Malheur County, Oregon, and is in words and figures as follows, to wit:

'Ten Mile Creek.

'Notice is hereby given to whom it may concern that I, the undersigned, hereby claim 1500 inches of the waters of this creek known as Ten Mile Creek, to be taken out at or about two miles above the mouth of the canyon. I intend to use the same for irrigation and domestic purposes.

(Signed) John N. Vance.'

"That plaintiff and plaintiff's predecessors have been in the open and adverse possession of said above described lands and the fee owner thereof for more than fifty years prior to the date hereof, and have continuously each and every year for fifty years im-

mediately prior to the date of commencement of this suit, used the waters of said Ten Mile Creek to irrigate plaintiff's said lands, and plaintiff is now the owner and entitled to the prior use of 1500 miners inches of the waters of said Ten Mile Creek to be used upon her said land for the irrigation thereof.''

This being a suit to enjoin an alleged wrongful diversion of water to the prejudice of plaintiff's right thereto, and it being urged that no transfer is pleaded or proved from John N. Vance to plaintiff of any water right whatever, we first consider whether plaintiff is in fact the owner of any water right. In view of the fact that plaintiff's ownership of the lands irrigated by Vance is admitted; of the further fact that defendants introduced a record disclosing that said Vance acquired title thereto while he was in possession and making use of said water for the purpose of irrigating said lands, and of the further fact that at the time of the institution of this suit plaintiff, herself, was in possession of said property, we conclude that there was such privity of estate between Vance and plaintiff as to justify us in holding that plaintiff acquired the water right formerly held by Vance. It therefore becomes necessary to determine the character of said water right. There is direct testimony herein of the use of water upon the Vance ranch as early as 1881.

On direct examination, plaintiff testified:

''Q. You have stated I think that you went to live on the Vance Ranch about '81 or '82. A. Yes sir.

''Q. That is about the time your mother married John Vance? A. Yes, in '81.

''Q. At the time that you went to live on the Vance ranch were they raising crops and putting up hay? A. Yes.

"Q. And you have seen the water used from Ten Mile Creek on that ranch? A. Always.

"Q. As far back as you can remember? A. Yes, sir.

"Q. How did they apply that water, Mrs. Simpson, if you remember?

"A. Well as it came down the creek, just as it entered the field they put in light dams and things and scattered it around over parts of the field."

Mr. Thomas H. Dryden testified that in 1877 he was first upon plaintiff's premises; that Mr. John Vance was then living there; that the place had the appearance of an old established ranch and that there was lots of hay on it.

We think that this supports plaintiff's allegation, as herein above set out, to the effect that for 50 years prior to the institution of this suit plaintiff's predecessor and plaintiff have appropriated the water of Ten Mile creek for the beneficial use mentioned. This suit was instituted in 1930. The pleadings and the proof justify us in finding that plaintiff had a right to the waters of Ten Mile creek with a priority of 1880.

■ The extent of the Vance appropriation must be approximated. The testimony discloses various estimates of the acreage irrigated from 200 acres to 600 acres. There are springs upon the place which plaintiff claims are fed by the flow of water in Ten Mile creek, but the testimony on that point does not convince us of that fact. The water from these springs has been used to irrigate acreage estimated variously from 15 to 65 acres. From the record, after making allowance for the service of the water from said springs, we find that an appropriation of the waters of Ten Mile creek by Vance has been established which irrigated 550 acres of the lands now owned by plaintiff. The record also discloses

that it requires a miner's inch of water for a period of 60 days to irrigate a single acre of this land; hence, we hold that plaintiff has a water right, with a priority of 1880, to 550 miner's inches for a season each year of 60 days.

Plaintiff charges defendants with wrongfully diverting the water of Ten Mile creek to the prejudice of her right.

■ The appealing defendants admit the diversion and seek to justify it on the ground that they have acquired rights to the water of said creek superior to those of plaintiff. The appealing defendants are Mr. Joe Bankofier, Mr. Juan Jaca, and Mrs. Alice D. Bankofier, administratrix of the estate of George Malkinson, deceased.

It is admitted that defendant, Joe Bankofier, is the record owner of the following described lands, to wit: NE¼ SE¼ and S½ SE¼, section 20; and NW¼ NE¼ section 29; SW¼ SW¼ section 29; SE¼ SE¼ section 30; NE¼ NE¼ section 31; NW¼ NW¼ section 32, and the W½ NE¼ and E½ NW¼ and the SW¼ NW¼ and NW¼ SW¼ section 31, all in Twp. 40, south range 43, E. W. M., in Malheur county, Oregon.

On April 23, 1883, Alfred Wilkinson filed in the United States Land Office at Lakeview, Oregon, his preemption declaratory statement showing his intention of making preemption entry on the NW¼ of the NE¼ of section 29, and the S½ of the SE¼ and the NE¼ of the SE¼ of section 20 in said township and range.

This last described tract of 160 acres comprised the original Ten Mile station. In 1873, according to witness Baber, Hank Woods and Zack Smith were operating said station and had diverted the waters

of Ten Mile creek by means of a ditch, for use in irrigating a part of said premises. According to witness Bosenberg, Hank Woods and Con Ryan were then operating said station. Plaintiff testified that, prior to 1881, Ryan and Woods were operating the stage station. Plaintiff also testified that her mother, then Mrs. Eldredge, later the wife of Mr. Vance, operated the station for a couple of years and until about 1881, when she sold out to Alfred Wilkinson. Mrs. Vargas, a daughter of Mr. Wilkinson, testified that her father purchased the Ten Mile station from Hank Woods and Con Ryan. It is urged that there was not such a privity of interest or estate between Woods and Ryan on the one hand and Wilkinson on the other as to support a valid transfer to the latter of the water right initiated by the former. We cannot concur in this view.

We think the testimony warrants the deduction that in 1882 there was a sale of the improvements by Woods and Ryan to Alfred Wilkinson and a transfer of said water right.

We are unable to agree with defendants that Woods and Ryan contemplated any greater or different use of the waters which they diverted from Ten Mile creek than that of irrigating the quarter-section of land upon which said station was located or such part thereof as might thus be made productive. The maximum area which Woods and Ryan actually irrigated was about two acres of garden and about 15 acres of wild hay.

After Alfred Wilkinson took possession of said premises in 1882, he increased the irrigable acreage on the quarter section comprising the original Ten Mile station to eight acres, and also appropriated a

larger quantity of water from the Ten Mile creek using the same ditch and other ditches to irrigate the acreage of Malkinson, now deceased, which acreage defendant Joe Bankofier has held under lease since 1921, and the acreage of Fred Wilkinson, which defendant Joe Bankofier has acquired by deed. In 1900, Alfred Wilkinson filed a notice appearing of record at page 117 of Book B of the record of water rights for Malheur county. In this notice Mr. Wilkinson states that for 19 years he has owned and maintained and used a ditch conveying all the waters of Ten Mile creek to and upon the lands known as Ten Mile ranch and that said ditch having been located, constructed and used by former owners of the premises aforesaid, he intends to hold, maintain and use the same.

■ We regard the appropriation for use on the Malkinson and Fred Wilkinson premises as distinct from the original diversion of Woods and Ryan. We think, however, that in the notice last mentioned there is nothing inconsistent with Alfred Wilkinson's succession to said original appropriation as applied to the quarter section upon which the station was located. That a part of the water taken by these subsequent appropriations was taken from the same ditch that Woods and Ryan used does not alter the fact that they were new, successive and several appropriations: 2 Kinney on Irrigation and Water Rights (2d Ed.) 1184, § 683.

■ We are not unmindful of the rule that in determining the extent of a given appropriation we should consider not only the quantity of water actually used but also that which was within the contemplation of the appropriator, provided that with reasonable diligence the larger quantity is actually utilized; but, as stated, we

are unable to deduce from the record any intention on the part of Woods and Ryan to irrigate any other premises than the quarter section upon which their stage station was situated.

The land known to this record as the Fred Wilkinson property is described as the SW¼ SW¼ of section 29, SE¼ of the SE¼ of section 30, the NE¼ of the NE¼ of section 31, and the NW¼ of the NW¼ of section 32 in township 40, S. R., 43 E. W. M.

In 1883, Alfred Wilkinson extended the fence of the original Ten Mile station a distance of approximately two miles enclosing the quarter section last above described, and, about that time, appropriated the water of Ten Mile creek for the purpose of irrigating a part of said Fred Wilkinson property. On direct examination, defendant, Joe Bankofier, testified that practically the entire 160 acres of the Fred Wilkinson property are under irrigation. On cross-examination, he disclosed that there were certain areas, the extent of which he was unable to give, not so irrigated.

The premises known herein as the Malkinson property were also enclosed by the fence above mentioned. It is particularly described as follows: The SE¼ of the NW¼, the N½ of the SW¼ and the SW¼ of the NE¼ of section 29, township 40 S. R. 43 E. W. M. The extent of the irrigation upon this last described property is not definitely shown. Defendant, Joe Bankofier, who has it leased, testified that practically all of it is being irrigated except certain corners, the area of which he could not give.

The Valdez property is described as the W½ of the NE¼ of section 31 and the E½ of the NW¼ of section 31 of said township and range. Defendant, Joe Bankofier, testified that no water is taken out

of Ten Mile creek to irrigate that land. It is irrigated from water flowing off of the Fred Wilkinson place. By virtue of a statute, ditches utilizing the waste, spring or seepage waters of the state are governed by the same laws relating to a priority of right as those ditches constructed for the purpose of utilizing the waters of running streams; but the writer is of the opinion that this statute is not applicable to the case at bar.

It was held in *Brosnan v. Harris*, 39 Or. 148, 151 (65 P. 867, 54 L. R. A. 628, 87 Am. St. Rep. 649), that "under this provision there would seem to be no distinction between the right to appropriate the waters of running streams and those of springs"; and in *Vaughan v. Kolb*, 130 Or. 506 (280 P. 518), under this provision of the statute, the right of an appropriator was upheld to water released from a municipal reservoir. In the latter case, Mr. Justice (now Mr. Chief Justice) Henry J. BEAN refers to the holding in *Hough v. Porter*, 51 Or. 318, 325 (syllabus No. 63) (95 P. 732, 98 P. 1083, 102 P. 728), and the criticism thereof in 2 Kinney on Irrigation and Water Rights (2d Ed.) 1184, § 683. There is no testimony concerning ditches or any ditch on the Valdez property and the record is such that we cannot determine when nor how much water was utilized on that property; hence, that must be left for subsequent determination except that the record discloses that, if there is any water right at all to said property, it is subject and subordinate to the right of plaintiff and those rights herein adjudicated, which are appurtenant to the original Ten Mile station quarter section and the quarter sections known as the Malkinson and Fred Wilkinson places.

No serious claim is made for a water right for the irrigation of the Mendieta land described as the SW¼ of the NW¼ and the NW¼ of the SW¼ of section 31 in said township 40.

We think that the record supports a holding that there are water rights for the purpose of irrigation appurtenant to the Malkinson and Fred Wilkinson properties with an 1884 priority, but we are unable to determine the extent thereof. These, being subsequent and subordinate to the water right of plaintiff, afford no defense herein.

The defendant, Jaca, claims a water right based upon an alleged appropriation in 1886 by one of the predecessors in interest of said defendant. The record discloses a notice dated March 8, 1887, by John Breslin and Joe M. King of a claim of the water in Ten Mile creek. The testimony tends to identify the ditch now in use by Jaca as the one to which said notice refers. Assuming, though not deciding, that Jaca's right to the use of the waters of said Ten Mile creek is the same right claimed by said notice, it is still subsequent and subordinate to the rights of plaintiff and the other defendants whose rights have been declared herein.

As to plaintiff's claim, based upon the notice referred to in paragraph 5 of her complaint, and herein above set out wherein John N. Vance claimed 1,500 miner's inches of the waters of Ten Mile creek, we think that should be considered merely as an additional or supplemental claim by Vance, who, at that time, is shown to have been an appropriator of certain waters from said creek. There has been no claim herein on the part of plaintiff that her rights were those of a lower riparian owner, hence, the inconsistency between a lower riparian owner's rights and one

claiming by reason of prior appropriations is not presented.

For the reasons above stated, the decree of the circuit court is modified in the following respects; that is to say, instead of the mandate of the circuit court as to the rights of plaintiff and defendants Joe Bankofier and Alice D. Bankofier, administratrix of the estate of George Malkinson, there is hereby substituted the following provisions:

. It is ordered, adjudged and decreed that the plaintiff Lulu M. Simpson be and she is hereby declared to be the owner and entitled to a water right with a priority of 1880 to 550 miner's inches for a season of 60 days each year of the waters of said Ten Mile creek; and further, that plaintiff be and she is hereby declared to be the owner and entitled to all of the waters of Oregon Canyon creek and Rock creek and of the springs that arise upon her premises, all of which waters may be applied on any part of the said property described as follows:

NE¼ SW¼ and S½ SW¼ section 23; SE¼ SE¼ section 22; W½ W½ section 26; NE¼ NE¼ and SE¼ SE¼ section 27; SW¼ SE¼ and E½ SE¼ section 33; S½ NW¼ and N½ SW¼ and NE¼, N½ SE¼ and SE¼ SW¼ section 34; W½ and SW¼ NE¼ and NW¼ SE¼ section 35, all in Twp. 40 S. All of section 3, NW¼ section 2, all in Twp. 41 south range 42, E. W. M. in Malheur county, Oregon.

It is further ordered, adjudged and decreed that the defendant, Joe Bankofier, is and he is declared to be the owner of a water right, with a priority of 1873, to 80 miner's inches of. the waters of said Ten Mile creek for a season of 60 days each year which said waters may be applied on any part of the real property described as follows:

The NW¼ of the NE¼ of section 29, and the S½ of the SE¼ and the NE¼ of the SE¼ of section 20 in township 40 south range 43 E. W. M., Malheur county, Oregon.

And it is further ordered, adjudged and decreed that said defendant, Joe Bankofier, is and he is hereby declared to be the owner of a water right with a priority of 1884 to the waters of said Ten Mile creek, which said waters may be applied on any part of the real property described as follows:

SW¼ of the SW¼ of section 29; SE¼ of the SE¼ of section 30; NE¼ of the NE¼ of section 31, and the NW¼ of the NW¼ of section 32, in township 40 south range 43 E. W. M. The SE¼ of the NW¼, the N½ of the SW¼, and the SW¼ of the NE¼ of section 29, township 40, south range 43 E. W. M.

It being hereby further expressly decreed that the foregoing adjudication as to said water right last hereinabove stated, the same being the said water right with a priority of 1884, is without prejudice to any further order or adjudication which hereafter may be made with respect to the same, except as to the date of its priority.

And it is further ordered, adjudged and decreed that defendants herein and each of them be and they are hereby perpetually enjoined from diverting any of the waters of Ten Mile creek to the prejudice of plaintiff's right thereto as herein determined.

Except as herein modified, the decree of the circuit court is affirmed.

It is further ordered that neither party hereto recover costs or disbursements on appeal.

Petition for rehearing denied January 24, 1933

ON PETITION FOR REHEARING

(18 P. (2d) 814)

KELLY, J. Defendants, Juan Jaca and Joe Bankofier, have each filed a petition for rehearing.

Defendant Jaca complains because we did not hold that he had a water right equal to that of plaintiff in and to one-half of the waters of Ten Mile creek by adverse use for more than the prescriptive period. The evidence on behalf of Mr. Jaca is unconvincing and incomplete. We held that his right, if any, is subsequent and subordinate to the rights of plaintiff and the other defendants, whose rights were declared in the original opinion. We adhere to that holding.

Defendant Bankofier calls attention to the failure of the writer to indicate when the use of the waters of Ten Mile creek, by the parties adjudged to have rights to the use thereof, shall begin. It is therefore ordered that the defendant, Joe Bankofier, shall begin the exercise of his right, with a priority of 1873, at the beginning of the spring run-off of Ten Mile creek; using the same continuously for 60 consecutive and successive days thereafter, plaintiff shall begin the use of the said waters at the expiration of 60 consecutive and successive days of use by said Bankofier and use said waters for an additional period of 60 consecutive and successive days pursuant to her rights thereto with a priority of 1880, and that, at the expiration of said additional period of 60 days, said defendant, Joe Bankofier, may begin the use of said waters pursuant to his right thereto with a priority of 1884, it being expressly decreed that the extent of the right, with a priority of 1884, held by said Bankofier, may be made more defi-

nite by an order subsequent hereto of any court having jurisdiction and that this order made hereby and herein is without prejudice to the rendition of such subsequent order. It is further ordered that the foregoing provisions be incorporated in the decree entered by the circuit court. Except as above amplified, the former opinion is adhered to.

The petitions for rehearing are denied.