Argued May 5, reversed June 10, petition for rehearing
denied September 9, 1964

CLEAVER, SUCCESSOR IN INTEREST TO BERT
AKIN v. JUDD ET AL
393 P. 2d 193

*Harold Henigson,* Nyssa, argued the cause and submitted briefs for appellants.

*Charles W. Swan* and *Robert D. Lytle,* Vale, argued the cause for respondents. With them on the brief were Lytle & Goodwin, Vale.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

O'CONNELL, J.

Defendants appeal from a decree enjoining them from diverting the waters in an unnamed draw which are used by plaintiffs for irrigation purposes.

The suit may be described roughly as a contest between an irrigation district and two owners of farm land over the right to water in a draw extending through a part of the irrigation district.[①] Defendants

---

[①] The defendant Payette Oregon Slope Irrigation District is a part of the Owyhee Federal Reclamation Project. The project is described in defendants' brief as follows: "The project was constructed by the United States under the Federal Reclamation Laws (Act of May 16, 1926, 44 Stat 479). It is now operated in two divisions, the south division consisting of the lands in Ore-

contend that aside from surface water runoff the water in the draw consists solely of waste and seepage water from its irrigation project and that they have a right to recapture these waters while still within the boundaries of the reclamation project. Plaintiffs contend that the waters are not solely waste and seepage waters but consist, in part at least, of water having a source other than the irrigation project.

The defendant Payette Oregon Slope Irrigation District was organized in 1912 to provide water for the irrigation of agricultural lands within its boundaries.[2] In 1919 and 1922 plaintiffs predecessors obtained water right certificates for the limited use of water flowing along the draw. Defendants do not contest plaintiffs' claim to the water under these certificates. In 1937 the Owyhee Federal Reclamation Project was extended to the Owyhee District and the additional water used on the project began to create a drainage problem in the draw. A drain was constructed in 1938 to alleviate the problem. After the construction of the drain plaintiffs took water from that structure for irrigation purposes.

In early 1956 the project undertook construction of a ditch to recover for re-use in the district some of the

gon and Idaho and the other division consisting of lands * * * in seven irrigation district[s] in Malheur County [including] * * * the Owyhee Irrigation District, [and] the Payette Oregon Slope Irrigation District * * *. The board of the north division is designated the Owyhee Project North Board of Control and its directors are defendants in this suit but they are each also directors of an irrigation district in the north division. Each irrigation district is a separate entity with individual boundaries and the Owyhee Project North Board of Control operates as their combined agent."

[2] The Payette Oregon Slope Irrigation District became a part of the part of the Owyhee Federal Reclamation Project in 1936.

waste water flowing in the draw. Later in 1956 plaintiffs filed application for and received permits from the Oregon State Engineer for the irrigation of lands in addition to those covered by the 1919 and 1922 certificates.[9] After issuance of the permits the plaintiffs opened the diversion ditch to allow the water to flow to their land. Defendants rebuilt the ditch and plaintiffs brought suit to enjoin the diversion of the water.

The trial court based its decision for the plaintiffs upon the ground that the certificates of water right issued to plaintiffs, not having been contested within three months after issuance, were conclusive evidence of plaintiffs' rights, applying ORS 537.270, which reads as follows:

> "A water right certificate issued in accordance with the provisions of ORS 537.250 which, after the expiration of three months from the date it is issued, has not been contested and canceled in the manner provided in ORS 537.260, and a water right certificate, when issued under ORS 539.140, shall be conclusive evidence of the priority and extent of the appropriation therein described in any proceeding in any court or tribunal of the state, except in those cases where the rights of appropriation thereby described have been abandoned subsequent to issuance of the certificate."

It will be noted that ORS 537.270 makes the water right certificate conclusive only if not contested "in the manner provided in ORS 537.260." ORS 537.260 (3) provides:

> "(3) Any person owning an application, permit or water right certificate subsequent in priority

---

[9] The applications were filed on May 21, 1956 for permits to irrigate 60.7 acres of Akin's land and 53.5 acres of Matthews' land from waters in the draw. The State Engineer granted both permits with a priority date of May 21, 1956.

may jointly or severally contest before the State Engineer the issuance of the water right certificate at any time before it has issued, and after the time has expired for the completion of the appropriation under the permit, or within three months after issuance of the certificate. The contest shall be brought upon application made, and hearing shall be had in the same manner and after notice as provided in ORS 537.420 and 537.430 for proceedings for cancelation of permits. * * *"

■ It is apparent that ORS 537.270, read together with 537.260, was intended to make a water right certificate conclusive only against a person whose water right was "subsequent in priority." ORS 537.270 does not purport to foreclose the interest of an owner whose water right originated prior to that claimed by a subsequent certificate holder. The question is, then, whether defendants' right to the waters flowing in the draw were subsequent or prior to the rights of plaintiffs. If, as contended by plaintiffs, the waste and seepage waters from defendants' irrigation project join with the waters of a natural stream flowing in the draw, then defendants would lose their right to recapture such waste and seepage waters. Under such circumstances all of the water in the stream would be subject to appropriation and plaintiffs' permits and certificates being prior to any appropriation by defendants would render ORS 537.260 applicable. If, however, the waters in the draw have their source solely in the waste and seepage waters and the occasional surface water runoff, then defendants would be entitled to recapture the water before it left the lands of the district.

■■ The evidence is conflicting as to whether the waters flowing in the draw had their source solely from

waste, seepage and surface runoff or from other sources sufficient to characterize the watercourse as a stream. Examining the record de novo, as we must, we are of the opinion that the evidence supports defendants' contention that a natural stream has never existed in the unnamed draw in question.

■■ The only question remaining is whether the facts bring the instant case within the principle that an owner may recapture waste and seepage water before it leaves his land.[④] An irrigation district, being a municipal corporate entity, is regarded as an owner for the purpose of applying this principle. Therefore, if the waste and seepage water is recaptured for re-use within the boundaries of the district, those who have previously used such waters have no cause of action for having been deprived of the water. This is made clear in *Stevens v. Oakdale Irr. Dist.*, 13 Cal2d 343, 90 P2d 58 (1939).[⑤] In that case the plaintiffs brought suit to restrain an irrigation district from recapturing waste and seepage water and preventing its escape down a natural channel to plaintiffs' land. It was held that one who diverts water from a stream is entitled to exclusive control of that water, including the wastage incident to irrigation so long as he uses

[④] It has been recognized in Oregon that an appropriator is justified in recapturing waste water remaining on his own land (see Barker et al v. Sonner et al, 135 Or 75, 79, 294 P 1053 (1930)). When such water leaves the irrigation district land or the control of the owner of the land and returns to the stream it is recognized as free, unappropriated water and a part of the stream flow. (See Jones v. Warmsprings Irrigation District, 162 Or 186, 198, 91 P2d 542 (1939))

[⑤] The Stevens case is noted in 28 Calif L Rev 113 (1939). See also Note, 12 Wyo L J 47 (1957). Accord, Hafliger v. County of Sacramento, 97 Cal App2d 850, 218 P2d 993 (1950); Brighton Ditch Co. v. City of Englewood, 124 Colo 366, 237 P2d 116 (1951); Binning v. Miller, Water Supt., 55 Wyo 451, 102 P2d 54 (1940).

it for beneficial purposes. It was further held that in the process of controlling appropriated water a natural channel may be used as a temporary conduit and the water subsequently recaptured so long as the recapture is effected before the water leaves the owner's land or that of the irrigation district. In reaching this conclusion the court reasoned that a property right in water once used ceases when possession of the corpus of the specific water is lost or abandoned. But, it was pointed out, this loss or abandonment of the corpus of specific water does not constitute a loss or abandonment of the water right itself, and although other parties may properly use water which has been lost or abandoned, they are not entitled to compel a similar abandonment in the future.[6]

■ In the case at bar the waste and seepage water was recaptured within the defendant irrigation district.[7] We regard it as immaterial that a part of the

---

[6] The distinction between an abandonment of the corpus of specific water as distinguished from an abandonment of a water right was recognized in Vaughan v. Kolb et al, 130 Or 506, 280 P 518 (1929). The distinction is more clearly drawn in Stevens v. Oakdale Irr. Dist., supra.

[7] The respondents rely upon Henrici v. Paulson, 134 Or 222, 293 P 424 (1930) and Jones v. Warmsprings Irrigation District, 162 Or 186, 91 P2d 542 (1939). The Henrici case held that spring water originating and remaining on the defendants' land could not be appropriated by others. The court noted that a different rule would apply where the spring water left the original owner's property or mingled with the water of a running stream. Henrici is distinguishable from the instant case in that the water which is the subject of controversy was recaptured before it left the irrigation district and did not become a part of a naturally running stream. Furthermore, in the instant case the water involved was already appropriated. In the Warmsprings case irrigation water was allowed to drain through the soil and return to the river without measurement. It was held that water which so returned to the stream flow was subject to appropriation by others. In the case at bar the waste and seepage water is recaptured before it reaches a stream.

waste and seepage may have had its source in one of the other irrigation districts in the Owyhee Federal Reclamation Project. For the purpose of applying the principle that an owner may recapture waste and seepage water, the project may be treated as an entity.

The decree of the lower court is reversed.