Argued September 4, affirmed December 26, 1975, petition for
rehearing denied for late filing January 27, 1976

WILBER ET AL, *Petitioners, v.* WHEELER,
*Respondent.*
543 P2d 1052

*William D. Cramer,* of Cramer & Pinkerton, Burns, argued the cause and filed a brief for petitioners.

*Al Laue* and *Louis S. Bonney,* Assistant Attorneys General, Salem, argued the cause for respondent. With them on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

HOWELL, J.

This mandamus proceeding was instituted by plaintiffs to require the State Engineer to issue a corrected certificate of water right on certain lands owned by plaintiffs in Harney County. The State Engineer demurred to the alternative writ of mandamus on the grounds that plaintiffs had failed to state a cause of action. The circuit court allowed the demurrer, and the Court of Appeals affirmed, 21 Or App 239, 534 P2d 520 (1975). We granted plaintiffs' petition for review.

Plaintiffs' petition for review included copies of the original water right application, the permit to appropriate water, the final proof survey, and the certificate of water right, all of which had been attached to the petition for the alternative writ. These documents disclose the following facts.

On November 8, 1940, plaintiffs' predecessor in interest filed an application with the State Engineer for a permit to irrigate 167.1 acres of land. The permit was issued in January, 1941, the irrigation work completed, and final proof submitted to the State Engineer. The latter made the necessary survey and issued his final proof survey on June 26, 1954. That survey showed the plaintiffs' predecessor was apparently irrigating 219.6 acres, including acreage in several parcels which were not included in either the application or the permit, but which were contiguous with land which was included. The State Engineer, on August 8, 1956, issued his certificate of water right for 167.1 acres with a priority date of November 8, 1940, the date of the original application. The certificate covered only the uppermost 167.1 acres of the 219.6 acres shown to be under irrigation on the final proof survey.

Although plaintiffs' predecessor presumably received a copy of the certificate shortly after it was issued, plaintiffs apparently did not discover until March, 1974, that 17 of the acres which were included in the certificate were actually owned by a third party. At that time plaintiffs requested the State Engineer to reissue their certificate to include only those irrigated lands which had been owned by plaintiffs' predecessor. Plaintiffs apparently hoped to thereby transfer the water rights on the 17 acres which they did not own to other lands which they did own and which were shown in the final proof survey to be under ir-

rigation, but which were not included in the certificate.

Upon the State Engineer's refusal to change and reissue the certificate, plaintiffs brought this suit for a writ of mandamus seeking to compel the State Engineer to reissue the certificate, omitting the 17 unowned acres and including all the irrigated lands which were shown in the final proof survey and which were owned by plaintiffs—a total of 197.8 acres.

Plaintiffs alleged in their petition for an alternative writ of mandamus:

> "[B]y mistake, the Water Right Certificate * * * included lands which were never owned by Petitioners or their predecessors in interest and failed to include lands in legal subdivisions for which water rights application was made, and did not conform in these respects to the Final Proof Survey."

The writ commanded the State Engineer to reissue the certificate for a total of 197.8 acres, including all of plaintiffs' irrigated lands shown on the final proof survey and omitting the 17 acres covered by the certificate but not owned by plaintiffs, or to show cause why he had not done so. The State Engineeer demurred, and the demurrer was sustained for failure of plaintiffs to state facts sufficient to constitute a cause of action.

On appeal, plaintiffs contended that the certificate which was issued was a "patently defective water right certificate" and that the issuance of such certificate was subject to correction by the State Engineer as a "clerical mistake." However, the Court of Appeals affirmed the circuit court's decision sustaining

the demurrer, holding that the State Engineer, under ORS 537.270,[1] had no authority to recall the certificate of water right and issue a new certificate. For the reasons which appear below, we do not reach the issue decided by the Court of Appeals and, for purposes of this opinion, we will assume that the State Engineer has authority to correct at least clerical errors in a certificate of water right. *Cf. In re Willow Creek,* 74 Or 592, 654-55, 144 P 505 (1914), *modified on rehearing* 146 P 475 (1915).

The threshold question in this case is whether the State Engineer made a clerical mistake in issuing a water right certificate to plaintiffs' predecessor for the 17 acres which he did not own and which had not been applied for, and in failing to include in the certificate other lands which he did own and which had been applied for. Although, as plaintiffs allege, the certificate did include lands which were not applied for and were not owned by plaintiffs' predecessor, the final proof survey map which was issued by the State Engineer indicates that these lands were actually under irrigation by plaintiffs' predecessor. While the applicant did not make reference to the 17 acres now in dispute in his application, the application also did not cover other areas which the State Engineer found plaintiffs' predecessor to have been irrigating at the time of the final proof survey. Some

---

[1] ORS 537.270 states:

"Conclusiveness of certificate. A water right certificate issued in accordance with the provisions of ORS 537.250 which, after the expiration of three months from the date it is issued, has not been contested and canceled in the manner provided in ORS 537.260, and a water right certificate, when issued under ORS 539.140, shall be conclusive evidence of the priority and extent of the appropriation therein described in any proceeding in any court or tribunal of the state, except in those cases where the rights of appropriation thereby described have been abandoned subsequent to issuance of the certificate."

of these other irrigated lands are owned by plaintiffs, but others apparently are not.

■ It does not appear that the inclusion of the 17 unowned acres in the certificate was a clerical mistake by the State Engineer any more than the similar inclusion of other lands which were owned by plaintiffs' predecessor, but which were not covered by the application. So long as all lands included in the certificate were shown to be under irrigation by plaintiffs' predecessor in the final proof survey, it does not appear that the Engineer made a clerical error by including in the certificate irrigated lands which plaintiffs do not own. Without searching the title for each of the irrigated areas to which water had been applied as shown by the final proof survey and which were not included in the application, it would seem impossible for the State Engineer to determine which, if any, of the lands found to be under irrigation at the time of the final proof survey were actually owned by some other party. The plaintiffs concede that the Engineer has the authority to include lands in the certificate which are not covered by the application so as to make the certificate conform to the lands actually being irrigated according to the final proof survey. Moreover, plaintiffs do not complain of his inclusion of those lands which had not been applied for, but which were owned by their predecessor.

■■ There is nothing in ORS ch 537 which would prevent someone from applying for water rights to land which they do not own but do intend to irrigate. As this court stated in *In re Waters of Deschutes River*, 134 Or 623, 655, 286 P 563 (1929), *reh. denied* and *opinion modified*, 294 P 1049 (1930):

"It was the plan of the water law of 1891, and runs all through the cases, that *an appropriation may be made by one person for the future use of*

*another; and for the future use upon lands which the appropriator does not then own, or which he does not contemplate owning and which he never does own.* It is sufficient for the validity of the appropriation if the original intention is, that the water filed upon is for use upon certain lands then definitely had in mind, and it is reasonably anticipated that when the diversion is ultimately completed and the water ready for application to that land, or other land or uses which have been substituted for the originally considered and intended land, such land will be then, or with reasonable diligence thereafter ready to receive it: *Nevada Ditch Co. v. Bennett*, 30 Or 59, 89 (45 P. 472, 60 Am. St. Rep. 777); *In re Water Rights of Hood River*, 114 Or., at pages 137-8 [227 P. 1065 (1924)]." (Emphasis added.)

■ Under our statute, it is clear that water rights are appurtenant to the land, and not to ownership of the land which changes hands frequently. *See* ORS 540.510. At the time of the final proof survey, applicants may be irrigating unowned land under permission from the owner, under a contract to purchase, under a leasing agreement, or under the mistaken belief that they actually own the land. Here, the final proof survey map which was prepared by the State Engineer indicates that plaintiffs' predecessor was actually irrigating the 17 acres now in dispute.

■ Similarly, it does not appear that the Engineer made a clerical mistake in failing to include in the certificate all irrigated lands shown in the final proof survey which are, in fact, owned by plaintiffs. The original application requested water rights for only 167.1 acres, and the permit was issued on that basis. However, the final proof survey map indicates that plaintiffs' predecessor was actually irrigating 219.6 acres. Apparently, in determining which lands were to be covered by the certificate, the Engineer followed

the final proof survey and included only the uppermost 167.1 acres which were then under irrigation and excluded all irrigated lands below the uppermost 167.1 irrigated acres. This action does not appear to have been the result of a clerical error.

■ The record in this case is not sufficient for us to conclusively determine more than that no *clerical* error was made by the State Engineer with regard to the water right certificate now in question. However, we are of the opinion that if some *nonclerical* error was made by the State Engineer, such an error should have been brought to his attention within three months after the issuance of the certificate. ORS 537.270 provides:

> "Conclusiveness of certificate. A water right certificate issued in accordance with the provisions of ORS 537.250 which, after the expiration of three months from the date it is issued, has not been contested and canceled in the manner provided in ORS 537.260, and a water right certificate, when issued under ORS 539.140, shall be conclusive evidence of the priority and extent of the appropriation therein described in any proceeding in any court or tribunal of the state, except in those cases where the rights of appropriation thereby described have been abandoned subsequent to issuance of the certificate."

We previously considered the application of this statute in *Cleaver v. Judd,* 238 Or 266, 393 P2d 193 (1964). In that case we determined that "ORS 537.270 does not purport to foreclose the interest of an owner whose water right originated prior to that claimed by a subsequent certificate holder." 238 Or at 270. In *Cleaver* we did not have occasion to consider the applicability of the statute to the certificate holder himself and, consequently, that question remains unresolved.

■■ Since the owner of a prior water right receives no notice of the issuance of a subsequent certificate and is not granted any opportunity to contest its validity, it seems clear that his prior vested rights cannot be impaired by the issuance of subsequent certificates. However, the owner of any particular certificate receives a copy of that certificate and thereby has notice of its terms. He need only compare it to his application or to his permit to determine if any significant change has been made. If he fails to take notice of the change and fails to bring his complaint to the attention of the State Engineer within the statutory three-month period, we believe that, with a possible exception for clerical errors, he should be bound by the terms of his certificate.

If a different interpretation were to be given ORS 537.270, any holder of a water right certificate could bring an action at any time seeking to enlarge the extent of his certificate on the basis of an alleged mistake. Such an interpretation would then leave subsequent appropriators with little security as to the state of their own title. The statute was apparently designed to protect the reliability of the record title and to promote the stability of water rights. *See In re Waters of Deschutes River,* supra at 657; *In re Willow Creek,* 74 Or 592, 610, 144 P 505 (1914), *modified on rehearing* 146 P 475 (1915). Whenever possible, it should be given an interpretation which will effectuate that design.[2]

■■ Therefore, we conclude that at least in relation

---

[2] It should also be noted that this result does not deprive the holder of a certificate of all remedies for nonclerical mistakes after the passage of three months. ORS 540.510-.530 provides a statutory procedure enabling owners of water rights to change the place of use of the rights shown in their certificate without losing their relative priority. That procedure, however, makes adequate provision for the protection of the interests of subsequent appropriators.

to mistakes of a nonclerical nature, the certificate holder must bring those mistakes to the attention of the State Engineer within the three-month period. After that, the certificate will be conclusive as to the priority and extent of the appropriation.[9]

The judgment of the Court of Appeals dismissing the alternative writ is affirmed.

O'CONNELL, C. J., dissenting.

The petition filed by petitioners alleges that "by mistake the water right certificate included lands never owned by Petitioners or their predecessors in interest and failed to include lands in legal subdivisions for which water rights application was made." Petitioners ask that this mistake (which is admitted by the demurrer) be rectified by adding what was mistakenly omitted and eliminating what was mistakenly added. Since this is an admitted mistake, it is difficult to understand why petitioners cannot require defendant to correct it. The majority opinion concedes that defendant could be required to correct a "clerical" error but not "nonclerical" errors. I do not understand why this should be so. Apparently the majority have concluded that ORS 537.270 precludes the correction of certificates for nonclerical errors after the expiration of three months from the date the certificate is issued. I would read this statute to be applicable in a situation where there is a contest between claimants to water rights and not to a situation where the petitioner is merely trying to correct his certificate to reflect the true historical fact that he made a claim

---

[9] Any further issues which may develop concerning the ownership of the 17 acres, the continuance of the delivery of water to that land, and the allocation of the costs of maintenance and repair of the irrigation ditch should concern only the plaintiffs and the actual owners of those 17 acres: they are not properly the subject of a mandamus proceeding between plaintiffs and the State Engineer.

to a certain amount of water, to be applied to certain land owned by him and that he was not claiming the right to use water on land in which he had no interest.

The majority opinion stresses the fact that an applicant may acquire a right to use water on land which he does not own but which he is irrigating under a contract of purchase, or lease, or under a mistaken belief that he owns the land. This may be true, but I fail to see its relevance where, as here, the petitioner is not claiming the right to use the water on any land but his own. Nor do I understand the majority's concern over the dangers which would arise in the future if certificates could be corrected as petitioners seek to do in the present case. Petitioners are merely asking the record to reveal what admittedly the record would have revealed if it had been correctly written by the State Engineer in the first instance. How can that operate to the detriment of anyone, either now or in the future?

DENECKE, J., joins in this opinion.