Argued and submitted March 15, 2002, affirmed July 9, 2003

Robert E. KERIVAN,
Gerald Summers, Dan McLeod, Clayton W. Fincher,
Paul Simon, Craig McIntosh, Russell P. Berard,
and Daniel Somers,
*Appellants,*

*v.*

WATER RESOURCES COMMISSION
and Water Resources Department,
*Respondents.*

00-CV-0225; A112936

72 P3d 659

Christopher L. Cauble argued the cause for appellants. With him on the briefs was Schultz, Salisbury, Cauble & Dole.

Jas Jeffrey Adams argued the cause for respondents. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Kistler, Judge.

DEITS, C. J.

---

* Deits, C. J., *vice* Armstrong, J.

**DEITS, C. J.**

■ ■    Petitioners hold water rights in Sucker Creek in Josephine County. In September 1999, petitioners requested that respondent Water Resources Department (department) initiate forfeiture proceedings for the purpose of cancelling other, more senior water rights to Sucker Creek on the basis of nonuse. The department refused to initiate such proceedings. Petitioners then filed a petition in circuit court pursuant to ORS 183.490 to compel the department to act and a complaint pursuant to ORS 28.010 that sought a judgment declaring that the department is "required to proceed with cancellation." Respondents did not file an answer, but moved to dismiss the petition and complaint under ORCP 21 A(1) and (8). The trial court granted the motion to dismiss and entered a judgment in favor of respondents. Petitioners appeal. Whether a complaint states a claim is a question of law. *Hansen v. Anderson*, 113 Or App 216, 218, 831 P2d 717 (1992). In determining the sufficiency of a complaint, "we accept as true all well-pleaded allegations in the complaint and give plaintiff the benefit of all favorable inferences that may be drawn from the facts alleged." *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999). Applying that standard of review, we affirm.

The facts are undisputed. In September 1999, petitioners requested the department to commence forfeiture proceedings pursuant to ORS 540.610 to 540.631 to cancel certain water rights that were senior to their water rights in Sucker Creek. In accordance with the department's rules, petitioners submitted affidavits asserting the nonuse of certain water rights having priority dates as far back as 1857. Each of the affidavits alleged facts supporting nonuse for a period of at least five years; several of the affidavits alleged much longer periods of nonuse, as long as 23 years.

In February 2000, the department returned the affidavits to petitioners and advised them that it would not initiate the requested forfeiture proceedings. The department explained that the water right certificates that petitioners sought to have cancelled for nonuse had already been cancelled in connection with water right transfers in 1998 and 1999. Those transfers occurred as follows: Oregon Water

Trust made three applications requesting that the water rights that are disputed here be transferred to change the use of the rights from irrigation use to in-stream use.[1] ORS 537.348; OAR 690-077-0070. The department published notice of the applications as required by ORS 540.520(5). Under that statute, any protest to an application must be filed within 30 days of the last publication. ORS 540.520(6). If a protest is timely filed, the department is required to hold a contested case hearing. ORS 540.520(7). In this case, the department received no objections to the proposed change in use and, consequently, did not hold a hearing. On April 13, 1998, June 12, 1998, and January 5, 1999, the department issued orders approving the three requested changes, cancelling the relevant prior water right certificates, and ordering the issuance of new certificates for the newly created in-stream water rights. No petitions for judicial review of those orders were filed. *See* ORS 536.075(1); ORS 183.484.

In their request to the department to commence forfeiture proceedings, petitioners asserted that, because the water rights had not been used for five years during a time *before* the transfer of the water right to in-stream use, the rights had been forfeited prior to the transfer. They asserted that, under ORS 540.610, the department therefore was obligated to commence forfeiture proceedings.[2] As noted above, the department refused to do so. The department explained its reasons for refusing to initiate cancellation proceedings:

"All of the affidavits are being returned to you. Upon review of Department records, it was determined that the water right certificates, which the affidavits allege should be canceled due to the non-use of water, were canceled in conjunction with water right transfers 7472, 7970 and 8094. Final orders approving the transfers were issued on

[1] An "in-stream" water right is "a water right held in trust by the Water Resources Department for the benefit of the people of the State of Oregon to maintain water in-stream for public use. An in-stream water right does not require a diversion or any other means of physical control over the water." ORS 537.332.

[2] ORS 540.610(1) and (2) establish a rebuttable presumption of forfeiture upon a showing of failure by the owner to "use beneficially" for five successive years. Upon unrebutted evidence of a forfeiture, the Water Resources Commission "shall" initiate proceedings to cancel the water right. ORS 540.631.

April 13, 1998, June 12, 1998 and January 5, 1999, respectively. These orders approving the water right transfers directed that the certificates be canceled.

"In conjunction with the issuance of the order, water right certificates confirming the change in use to in-stream were issued, in accordance with Oregon Administrative Rule 690-77-075(3) [*sic*]. The portion of an originating water right changed by a transfer order is not subject to a challenge alleging forfeiture once the appeal period of the order has passed. In this case, the last of the transfer orders was issued on January 5, 1999.

"Notice of each transfer application was published once a week for three successive weeks in the Illinois Valley News. The notice included the opportunity for individuals to protest the transfers. No protests were received within the protest period. Additionally, no objections to the transfer final orders were filed within the statutory appeal period."

Petitioners then filed, in circuit court, a petition for judicial review under ORS 183.490,[3] asserting that they had submitted a request for cancellation of a certified water right supported by affidavits in proper form and that the department had acted unlawfully by refusing to initiate the cancellation proceedings as required by ORS 540.631. Petitioners asked the circuit court to order respondents to initiate the cancellation proceedings. In addition to their petition for judicial review under ORS 183.490, petitioners filed a complaint for declaratory relief under ORS 28.010 to 28.160, requesting a declaration that the department was required to conduct cancellation proceedings.

Respondents moved to dismiss the petition and complaint under ORCP 21 A(1) (lack of jurisdiction) and (8) (failure to state a claim).[4] After a hearing on the motion, the trial

---

[3] ORS 183.490 provides:

"(1) The court may, upon petition as described in ORS 183.484, compel an agency to act where it has unlawfully refused to act or make a decision or unreasonably delayed taking action or making a decision."

[4] ORCP 21 A provides, in part:

"Every defense, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss: (1) lack of jurisdiction over the subject matter * * * [and] (8) failure to state ultimate facts sufficient to constitute a claim[.]"

court dismissed the petition and complaint. Judgment was entered in respondents' favor, and petitioners appealed.

In petitioners' single assignment of error before this court, they assert that the trial court erred in granting the motion to dismiss the ORS 183.490 petition and the declaratory judgment complaint.[5] We first address whether the trial court correctly dismissed petitioners' declaratory judgment complaint.

■　　　Generally, the various Administrative Procedures Act (APA) statutes governing judicial review provide the sole and exclusive means of obtaining judicial review of an agency's action, or refusal to act, under the APA. *Alto v. State Fire Marshal*, 319 Or 382, 876 P2d 774 (1994); *Ashland Drilling, Inc. v. Jackson County*, 168 Or App 624, 630-31, 4 P3d 748, *rev den*, 331 Or 429 (2000); *Mendieta v. Division of State Lands*, 148 Or App 586, 941 P2d 582 (1997), *rev dismissed*, 328 Or 331 (2000); *Lake County v. State of Oregon*, 142 Or App 162, 165, 920 P2d 1115 (1996). Petitioners' principal argument here appears to be cast in the alternative. Petitioners assert that, if ORS 183.490 does not provide a mechanism to obtain judicial review of the department's refusal to initiate forfeiture proceedings, then there is no available administrative remedy and, therefore, review under the Declaratory Judgment Act is appropriate. As we will discuss, however, ORS 183.490 does provide a mechanism to review the agency's refusal to act. In *League of Oregon Cities v. State of Oregon*, 334 Or 645, 652, 56 P3d 892 (2002), the Supreme Court, citing *Alto*, reasoned that, "[a]lthough a trial court has broad power to provide declaratory relief, it lacks subject matter jurisdiction under ORS 28.010 if some other *exclusive* remedy exists." (Emphasis in original.) Under these circumstances, ORS 183.490 did provide an exclusive remedy and, accordingly, the trial court properly dismissed plaintiff's declaratory judgment complaint for lack of subject matter jurisdiction.

---

[5] No one disputes that a motion to dismiss was the proper procedural mechanism to implement the court's disposition of the ORS 183.490 claim. Accordingly, we do not address that question.

We turn to petitioners' ORS 183.490 petition. Petitioners asserted in the petition, and argue here, that respondents were legally obligated to commence forfeiture proceedings under ORS 540.610 to 540.631 to cancel what petitioners describe as "the underlying water rights" when petitioners submitted their request to the department to initiate such proceedings. Petitioners rely on ORS 540.631 as the source of this obligation. It provides, in pertinent part:

> "*Whenever* it appears to the satisfaction of the Water Resources Commission upon the commission's own determination or upon evidence submitted to the commission by any person that a perfected and developed water right has been forfeited as provided in ORS 540.610(1), and would not be rebutted under ORS 540.610(2), the commission shall initiate proceedings for the cancellation of such water right by causing written notice of such initiation of proceedings to be given by registered or certified mail, return receipt requested, to the legal owner of the lands to which the water right is appurtenant and to the occupant of such lands."[6]

(Emphasis added.)

The question we must resolve in deciding if the trial court correctly dismissed petitioners' request that it order the department to initiate forfeiture proceedings is whether, under the circumstances here, ORS 540.631 required the department to initiate the proceedings requested by petitioners or whether the department properly declined to initiate such proceedings.[7] According to petitioners, under the applicable statutes, the fact that the department issued orders transferring the same water rights that petitioners sought to have cancelled and issued new certificates for those water rights does not justify the department's refusal to initiate a forfeiture proceeding to consider evidence of nonuse prior to the date of the transfer. Petitioners contend that forfeiture and transfer are separate and distinct proceedings and that there is nothing in the pertinent statutes that limits when a

---

[6] The Water Resources Commission has adopted rules to implement ORS 540.631. OAR 690-017-0005 - 690-017-0900.

[7] None of the parties disputes that ORS 183.490 is an appropriate means of seeking relief in these circumstances. Under these circumstances, in which the agency refused to act, it is. *Mendieta*, 148 Or App at 594.

forfeiture proceeding may be brought. Further, petitioners assert that failure to challenge a transfer on the ground of nonuse of the water right to be transferred should not be considered a failure to exhaust available remedies precluding a later challenge to the original water right based on forfeiture.[8]

In support of their argument, petitioners also rely on ORS 540.520(7), which provides that, when a protest to a proposed transfer is filed or when the director of the department finds it necessary to determine whether the proposed changes would "result in injury to existing water rights, the department shall hold a hearing on the matter." Petitioners also rely on the implementing rule, OAR 690-015-0050, which provides that a transfer shall not be approved if it would result in injury to existing water rights. Petitioners argue that they are not asserting that their water rights were injured by the transfer of the water rights to in-stream use, and, therefore, it was not appropriate or necessary for them to have asserted the forfeiture in the transfer proceeding.

Respondents contend that petitioners had not only the opportunity, but also the obligation, to challenge the validity of the water rights subject to the transfer request at the time that the request was before the department for consideration. Respondents note that a transfer application must, under ORS 540.520(2)(g), include "[e]vidence that the water has been used over the past five years according to the terms and conditions of the owner's water right certificate *or* that the water right is not subject to forfeiture under ORS 540.610." (Emphasis added.) In respondents' view, the transfer process, while separate from the cancellation process, nonetheless requires consideration of whether the rights sought to be transferred are valid and not subject to cancellation for nonuse. Respondents contend that, although notice of the proposed transfer was properly given pursuant to ORS 540.520(5), petitioners failed to participate in the transfer process and the water right certificates that petitioners

---

[8] It appears that the effects of a successful challenge would be a cancellation of the new water right certificates, a negation of the transfer of the water rights, and, if petitioners prove in a forfeiture proceeding that the water rights were forfeited, a benefit to them as holders of junior water rights.

sought to cancel for nonuse were canceled by virtue of the transfer to in-stream use. Accordingly, the department contends that petitioners' present challenge is essentially an untimely collateral attack on the final transfer orders and the newly issued water right certificates.

In determining the meaning of the applicable statutes, we begin with the text and context of those statutes. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). There is no question that, under the applicable statute, whether a water right has been forfeited *may* be an issue in a transfer proceeding. Petitioners *could have* protested the transfer of the water right on the basis that it had been forfeited because of a previous five-year period of nonuse. Under ORS 540.520(2)(g), the department is required to consider evidence that the water that is the subject of the existing water right certificate has been used over the past five years according to the terms of the water right certificate *or* that the water right is not subject to forfeiture for nonuse under ORS 540.610. The matter of whether the water right has been used in accordance with the existing certificate is a potential issue in the transfer proceeding.

We also do not agree with petitioners that it would not have been appropriate for them to participate in the transfer proceeding because, according to petitioners, their water right would not have been injured by a transfer of the use. *See* ORS 540.530(1)(a).[9] "Injury" is defined under OAR 690-015-0050(1)(b) to include an enlargement of the right to be transferred. "Injury to an existing water right" is defined to mean that the "proposed transfer would result in a water right not receiving the water to which it is legally entitled." OAR 690-015-0005(5). Paragraph 10 of petitioners' amended petition and complaint alleges that, if the "in[-]stream water use continues, petitioners' ability to withdraw water will be adversely affected during low water periods." We conclude

---

[9] ORS 540.530(1)(a) provides:

"If, after hearing or examination, the Water Resources Commission finds that a proposed change can be effected without injury to existing water rights, the commission shall make an order approving the transfer and fixing a time limit within which the approved changes may be completed."

that that allegation asserts an injury within the meaning of OAR 690-015-0005(5). Petitioners could have raised the validity of the underlying water rights in the transfer proceedings. Had they done so, the department would have had to initiate a contested case proceeding under ORS 183.413 to 183.470 and would have been obligated to consider the validity of the existing water rights. ORS 540.520(7).

■ We conclude that the text and context of the transfer statutes and rules would have allowed petitioners to raise the forfeiture issue that they now seek to have adjudicated by the department. The more difficult question, however, is whether petitioners' failure to have done so precludes them from now requiring the department to initiate a forfeiture proceeding based on the alleged nonuse of the water rights for a period of five years prior to the issuance of the new water right certificates issued in the transfer proceedings. The statutes are not entirely clear as to how the issuance of a new water right certificate affects the ability of a person to challenge a water right based on an asserted forfeiture of that right that allegedly took place before the transfer of the right.

Petitioners argue that the issuance of a new water right certificate has no effect on their ability to seek a forfeiture of the right based on nonuse that occurred before the issuance of the new water right certificate. They rely on two aspects of the statutes and their context. First, as previously quoted, ORS 540.631, provides that, "whenever" it appears to the Water Resources Commission, on its own initiative or based upon evidence submitted to it, that a water right has been forfeited under ORS 540.610, the commission shall initiate proceedings to cancel the water right. Petitioners are correct that there is no express limitation in that statute as to when a forfeiture proceeding may be brought. Petitioners also rely on the fact that, under the transfer statutes, the transfer application must show *either* that the water has been used over the past five years according to the terms of the water right certificate *or* that the water right is not subject to forfeiture under ORS 540.610. ORS 540.520(2)(g). Consequently, whether a forfeiture occurred before the five-year period immediately preceding the time of the transfer application will not necessarily be adjudicated in the transfer proceeding.

On the other hand, the text of other statutes and their context support the conclusion that petitioners' failure to initiate the forfeiture proceeding before or during the transfer proceeding precludes them from now initiating a forfeiture proceeding. Of particular significance is ORS 537.270, which specifically establishes the conclusive finality of water right certificates:

> "A water right certificate issued in accordance with the provisions of ORS 537.250 which, after the expiration of three months from the date it is issued, has not been contested and canceled in the manner provided in ORS 537.260, and a water right certificate, when issued under ORS 539.140, shall be *conclusive evidence of the priority and extent of the appropriation therein described in any proceeding in any court or tribunal of the state, except in those cases where the rights of appropriation thereby described have been abandoned subsequent to issuance of the certificate*."

(Emphasis added.) That conclusive finality applies equally to newly issued in-stream water right certificates. ORS 537.341 (transfer to an in-stream water right is accompanied by the issuance of a new water right certificate); ORS 537.350(1) (in-stream water right has the same legal status as any other water right). The text of ORS 537.270 clearly and unambiguously establishes the conclusiveness of a new water right certificate. It starts the five-year forfeiture clock from the date of issuance of the new certificate.[10] It is also significant that ORS 537.270 specifically provides that the certificate is conclusive evidence of the right, except when the right of appropriation is abandoned *subsequent* to the issuance of the certificate. Had the legislature intended to make an exception from the conclusiveness of the water right certificate for rights shown to have been abandoned *before* the issuance of the certificate, it could easily have done so.

Petitioners offer no explanation for or authority supporting the proposition that a certificate issued for an in-stream water right under ORS 537.341 is inferior in status

---

[10] We note that ORS 537.250 addresses issuance of a water right certificate pursuant to provisions in ORS chapter 537 governing the appropriation of water generally. The process for acquiring an in-stream water right is controlled by ORS 537.332 to 537.360.

to a certificate issued under ORS 537.250 or is not subject to the post-issuance abandonment reference set out in ORS 537.270. If an in-stream water right and its certificate are to be afforded the same status as other certificated water rights, then, once the certificate has issued and the three-month statutory period has run under the statute, the water right is secure unless "abandoned" (*i.e.*, cancelled for nonuse) *subsequent* to the issuance of the certificate under ORS 540.610 to 540.650. *See* ORS 537.350. Accepting petitioners' position would nullify the effect of ORS 537.350(1), giving an in-stream water right the same legal status as any other certificated water right, and of ORS 537.270, establishing the conclusiveness of a water right certificate. It would mean that, contrary to the specific provisions of ORS 537.270, an in-stream water right certificate was not conclusive.

■ Our review of the text and context of the above provisions of the water transfer statutes leads us to the conclusion that the newly issued water rights certificates here are "conclusive evidence of the priority and extent of the appropriation therein."[11] Under the circumstances here, the department's refusal to act was proper; it was not obligated to initiate the forfeiture proceedings requested by petitioners, and, consequently, petitioners are not entitled to relief under ORS 183.490. For all of the above reasons, the trial court properly granted respondents' motion to dismiss petitioners' ORS 183.490 petition and their complaint for declaratory relief.

Affirmed.

---

[11] Our conclusion is also supported by the relevant administrative rules and their application in this case. The water right certificates that petitioners sought to have forfeited for nonuse had previously been, in fact, cancelled by the time that petitioners ask the department to initiate the forfeiture proceedings. OAR 690-017-0400(1) requires that the department initiate forfeiture proceedings when affidavits in the proper form are filed. Affidavits must include a reference to the "certificates in question." OAR 690-017-0400(2)(b). In this case, by virtue of other cancellations, the certificates to which petitioners referred no longer existed.