WATERWATCH OF OREGON, INC.,
an Oregon nonprofit corporation,
*Petitioner,*

*v.*

WATER RESOURCES DEPARTMENT,
a state agency;
Oregon Water Resources Commission,
a state agency;
and The City of Cottage Grove,
an Oregon municipal corporation,
*Respondents.*

Water Resources Department
S42117; A147071

316 P3d 330

Lisa A. Brown argued the cause and filed the briefs for petitioner.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondents Water Resources Department and Oregon Water Resources Commission. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Sean D. Kelly argued the cause for respondent The City of Cottage Grove. With him on the brief was Martin M. Fisher.

Richard M. Glick, Michael J. Gelardi, and Davis Wright Tremaine LLP filed the brief *amici curiae* for Oregon Water Utilities Council and The League of Oregon Cities.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Petitioner WaterWatch of Oregon, Inc., seeks judicial review of a final order in a contested case in which the Water Resources Department (the department) granted the City of Cottage Grove (Cottage Grove or the city) an extension of time to perfect its water rights under a permit first issued in 1977. Petitioner contends that the department erroneously interpreted ORS 537.230(2)[1] by failing to condition the permit extension on the protection of certain fish species, ORS 537.230(2)(c), and on the development of a water management and conservation plan, ORS 537.230(2)(b). It also contends that the order is inconsistent with the department's implementing rule, OAR 690-315-0010(6)(g),[2] or, alternatively, that that rule is invalid because it exceeds the statutory authority of the department.

As an initial matter, respondents—the city, the department, and the Water Resources Commission—contend

---

[1] ORS 537.230(2) provides, in part:

"The holder of a permit for municipal use shall commence and complete the construction of any proposed works within 20 years from the date on which a permit for municipal use is issued under ORS 537.211. The construction must proceed with reasonable diligence and be completed within the time specified in the permit, not to exceed 20 years. However, the department may order and allow an extension of time to complete construction or to perfect a water right beyond the time specified in the permit under the following conditions:

"(a) The holder shows good cause. In determining the extension, the department shall give due weight to the considerations described under ORS 539.010(5) and to whether other governmental requirements relating to the project have significantly delayed completion of construction or perfection of the right;

"(b) The extension of time is conditioned to provide that the holder may divert water beyond the maximum rate diverted for beneficial use before the extension only upon approval by the department of a water management and conservation plan; and

"(c) For the first extension issued after June 29, 2005, for a permit for municipal use issued before November 2, 1998, the department finds that the undeveloped portion of the permit is conditioned to maintain, in the portions of waterways affected by water use under the permit, the persistence of fish species listed as sensitive, threatened or endangered under state or federal law."

[2] OAR 690-315-0010(6)(g) defines "[u]ndeveloped portion of the permit" to mean "the portion of the permit that is the difference between the maximum rate *** specified in the permit and the maximum rate *** diverted for beneficial use before the extension[.]"

that the case is moot because, after the extension order issued, the city perfected its water right under the permit and the department issued a "Certificate of Water Right," which petitioner did not challenge. Thus, in respondents' view, no decision by us can have any effect on the city's water rights under the permit. On the merits, respondents contend that the department correctly interpreted and applied ORS 537.230(2)(b) and (c) and OAR 690-315-0010(6)(g) and that the rule does not exceed the department's statutory authority.[3]

As explained below, we conclude that the case is not moot. On the merits, we conclude that the department erroneously construed ORS 537.230(2) and, consequently, failed to condition the extension of the permit as required in ORS 537.230(2)(b) and (c). Accordingly, we reverse and remand the department's final order extending the city's permit with instructions to the department to vacate the city's water-right certificate and to reconsider the city's permit extension request in accordance with this opinion.

The department's final order adopted the findings of the administrative law judge (ALJ), which petitioner does not challenge.[4] Those facts are as follows:

"1. The City of Cottage Grove holds permit S-42117 (permit), issued by the [department] on November 14, 1977. Under the permit, Cottage Grove is authorized to divert

---

[3] The Oregon Water Utilities Council and League of Oregon Cities filed a brief *amici curiae* in support of respondents and advance three additional arguments: (1) "The Growing Communities Doctrine provides the proper context for evaluating the water right permit extension at issue in this case." (2) "The [department] appropriately exercised its delegated authority in extending and certifying the City's water right." (3) "WaterWatch's statutory interpretation leads to an absurd result because it would jeopardize essential public water supplies."

[4] In the proceedings below, petitioner challenged the ALJ's finding (in paragraph 4 below) that the department "did not require municipal permit holders to submit new applications for permit extensions," contending that it was not supported by the record. In making that argument, petitioner relied on a letter sent by the department to the city on January 13, 2003, which, petitioner contends, required the city to submit a permit extension application at that time. The department denied petitioner's exception in its final order, and—although petitioner continues to refer to the letter in its arguments on review—petitioner does not renew its challenge to that finding. ORS 536.075(3) (appeal of a final order issued by the department in a contested case is to be conducted according to ORS 183.482, except as otherwise specifically provided); ORS 183.482(8)(c) (providing for substantial evidence review of agency findings).

up to 6.2 cubic feet per second (cfs) of water from the Row River for municipal use.

"2. According to the permit, Cottage Grove was required to complete construction of a water development project by October 1, 1979 and make complete application of water on or before October 1, 1980.

"3. Between 1977 and 1999, [the department] granted multiple extensions to the permit to allow Cottage Grove to complete construction of a water treatment plant on the Row River and make full application of the water claimed in the permit. The last extension granted by [the department] expired on October 1, 1999.

"4. Sometime prior to October 1,1999, due to protracted rulemaking proceedings regarding permit extensions, [the department] suspended all applications for extension of time and did not require municipal permit holders to submit new applications for permit extensions. [The department's] new rules became effective November 22, 2005.

"5. In November 2007, Cottage Grove completed an enlargement of the Row River Water Treatment Plant (RRWTP) designed to accommodate a new membrane filtration system. In May 2008, Cottage Grove completed construction of a larger diversion structure which allowed it to divert up to 6.2 cfs of water.

"6. On December 11, 2007, Cottage Grove submitted an application for extension of time to perfect water rights under the permit. On January 30, 2008, Cottage Grove requested its application be placed on administrative hold. [The department] granted this request.

"7. On July 10, 2008, Cottage Grove diverted 6.2 cfs of water into the RRWTP over a period of approximately six hours. The purposes of the diversion included meeting end user demands, storage for fire suppression, and filling Cottage Grove's finished water reservoirs to ensure maintenance of minimum line pressure necessary for proper functioning.

"8. On or about August 4, 2008, Cottage Grove requested [the department] remove the administrative hold from the application for extension and continue processing the application. At this time, Cottage Grove provided information to [the department] supplementing its original application.

"9. In addition to uses identified in its administrative rules, [the department] also considers uses aimed at maintaining municipal water systems, including flushing lines and maintaining system pressure, to be valid municipal uses of water."

(Record citations omitted.)

On August 19, 2008, the department issued a proposed final order that proposed to grant Cottage Grove an extension of time, from October 1, 1999, to October 1, 2013, to complete construction of its water system and to apply water to full beneficial use under permit S-42117. Petitioner filed a protest, *see* OAR 690-315-0060 (governing process for protesting the department's final order on an extension application); OAR 690-315-0100 (providing that OAR 690-315-0060 applies to extension applications for municipal water-use permits), the department referred the matter to the Office of Administrative Hearings, and an ALJ ultimately held a contested case hearing to resolve certain issues. On December 15, 2009, the ALJ issued an amended proposed order affirming the department's proposed order, concluding that "[t]here is no undeveloped portion of the permit and therefore no basis exists for evaluating the extension pursuant to ORS 537.[2]30(2)(c) and OAR 690-315-0080(1)(f)" and "no basis for conditioning the extension on the development of a Division 86 [water management and conservation] plan." Petitioner filed exceptions to the amended proposed order, including exceptions to those conclusions. In a final order issued September 14, 2010, the department denied all but one of petitioner's exceptions,[5] adopted the amended proposed order, and granted the city an extension of time, from October 1, 1999, to October 1, 2013, for it to perfect permit S-42117.

On October 15, 2010—approximately one month later, and during the time allowed for filing a petition for judicial review of that final order—the city requested, and the department issued, a "Certificate of Water Right" to the city for the water right perfected under permit S-42117. *See*

---

[5] Specifically, the department agreed with petitioner that the amended proposed order erroneously omitted reference to two of petitioner's exhibits, which had been accepted into evidence.

ORS 537.250.[6] Petitioner did not challenge the issuance of the certificate.[7] On November 15, 2010, petitioner timely filed its petition for judicial review of the department's final order extending the time for the city to perfect its water right under the permit.

During briefing, respondents moved to dismiss the petition for judicial review on the ground that issuance of the water-right certificate rendered the proceedings moot. Relying on *Hamel v. Johnson*, 330 Or 180, 998 P2d 661 (2000), the Appellate Commissioner denied the motion to dismiss, concluding that "[the department] could not have issued the certificate but for its reliance on the order challenged in this judicial review" and, "[t]herefore, issuance of the certificate did not render the dispute over the legality of the order moot."

As noted above, the parties' arguments as to the merits of the department's final order focus on the department's interpretation of the phrase "undeveloped portion of the permit" in ORS 537.230(2)(c), as well as the validity and application of the corresponding administrative rule, OAR 690-315-0010(6)(g). Respondents also renew their contention that the petition should be dismissed because the case is moot. We begin with the last question.

A brief description of the governing legal framework is helpful to understand the parties' arguments. To begin, "[a]ll water within the state from all sources of water supply belongs to the public." ORS 537.110. Subject to preexisting rights and various exceptions, "waters within the state may be appropriated for beneficial use, as provided in the Water Rights Act and not otherwise."[8] ORS 537.120. Again, with some exceptions and exemptions not applicable here, any person who wishes to appropriate surface water for beneficial use must file an application for a permit with the department before beginning construction of water works or

---

[6] ORS 537.250 governs the issuance of water-right certificates; the pertinent text is set out at 259 Or App at 725 n 9.

[7] Apparently, at that time, no public notice was required (or provided) for issuance of the certificate, and petitioner asserts that it did not, in fact, have actual notice of the issuance of the certificate. *See* 259 Or App at 731 n 16.

[8] The Water Rights Act is defined in ORS 537.010.

using, storing, or diverting water. ORS 537.130(1), (2); *see also* ORS 537.140 (setting out requirements for content of permit application; providing that permit is to be processed according to ORS 537.120 to 537.360 and, to the extent anything in ORS chapter 183 conflicts with those provisions, ORS 537.120 to 537.360 control).

If the application is approved, the department issues a water-right permit, which specifies the details of the authorized use and sets forth the terms, limitations, and conditions of the permit. ORS 537.211(1). The permit allows the holder of the permit to begin construction and to "take all action required to apply the water to the designated beneficial use and to perfect the proposed appropriation." ORS 537.211(1). In the case of a permit for municipal use, construction of any proposed works must be completed within 20 years of the date of issuance of the permit; however, under certain conditions, the department can allow an extension of time to complete construction or to perfect the water right. ORS 537.230(2); OAR 690-315-0070; OAR 690-315-0080. "The water right is perfected when the water actually is put fully to a beneficial use." *Teel Irrigation Dist. v. Water Resources Dept.*, 323 Or 663, 667, 919 P2d 1172 (1996).

The department is required to publish notice of a proposed final order granting or denying an extension of time in the weekly notice published by the department; it also must mail copies of the orders to the applicant and to people who submitted comments on the extension application and paid the required copy fee. OAR 690-315-0050(3) (so providing); OAR 690-315-0100 (OAR 690-315-0050(3) applies to applications for extensions of time for municipal water-use permits). The applicant or any person "adversely affected or aggrieved" by the proposed final order can protest the order and obtain a contested case hearing. OAR 690-315-0060. A final order in the contested case is subject to judicial review in this court. ORS 536.075(2).

Generally, when the application of water to the designated beneficial use is complete, the holder of the permit must have the appropriation surveyed and submit the survey to the department, along with a request under

ORS 537.250 for issuance of a water-right certificate. ORS 537.230(4). If the request and survey "shows, to the satisfaction of the department, that an appropriation has been perfected in accordance with the provisions of the Water Rights Act, the department shall issue to the applicant a [water-right certificate]." ORS 537.250(1);[9] *see also* ORS 537.260(1) (authorizing cancellation of permit if not perfected within the time limits in the permit); ORS 537.260(4) (providing that a municipality may partially perfect not less than 25 percent of the water authorized by its permit; in that case, the department shall issue a certificate only for the amount perfected); ORS 537.410 - 537.450 (providing process for cancellation of water-right certificate). On issuance, the original water-right certificate is mailed to the owner; a record of the certificate is maintained by the department. ORS 537.250(1); ORS 539.140.

As the department recognizes, issuance of a water-right certificate is an order in other than a contested case, subject to review under ORS 183.484.[10] Under ORS 183.484(2), a petition for judicial review of an order in other than a contested case must be filed within 60 days after the order is "served" or, if a petition for reconsideration or rehearing is filed, *see* OAR 137-004-0080, within 60 days after the order denying the petition is served. The date of service is the date that the order was delivered or mailed to "each party or, if applicable, the party's attorney of record." ORS 183.470(3); ORS 183.484(2).

---

[9] ORS 537.250(1) provides in full:

"After the Water Resources Department has received a request for issuance of a water right certificate accompanied by the survey required under ORS 537.230(4) that shows, to the satisfaction of the department, that an appropriation has been perfected in accordance with the provisions of the Water Rights Act, the department shall issue to the applicant a certificate of the same character as that described in ORS 539.140. The certificate shall be recorded and transmitted to the applicant as provided in that section."

[10] *See* ORS 536.075(1) ("Any party affected by a final order other than contested case issued by the Water Resources Commission or [the department] may appeal the order to the Circuit Court of Marion County or to the circuit court of the county in which all or part of the property affected by the order is situated. The review shall be conducted according to the provisions of ORS 183.484, 183.486, 183.497 and 183.500."); ORS 536.075(8) (for the purposes of ORS 536.075, "final order" has the meaning given that term in ORS 183.310(6)(b)); ORS 183.310 ("'Final order' means final agency action expressed in writing.").

Issuance of a water-right certificate secures certain rights. Specifically, ORS 537.250(3) provides:

> "Rights to the use of water acquired under the provisions of the Water Rights Act, as set forth in a certificate issued under [ORS 537.250(1)], shall continue in the owner thereof so long as the water shall be applied to a beneficial use under and in accordance with the terms of the certificate, subject only to loss:
>
> "(a) By nonuse as specified and provided in ORS 540.610; or
>
> "(b) As provided in ORS 537.297."

Moreover,

> "[a] water right certificate issued in accordance with the provisions of ORS 537.250 which, after the expiration of three months from the date it is issued, has not been contested and canceled in the manner provided in ORS 537.260[11] * * *, shall be conclusive evidence of the priority and extent of the appropriation therein described in any proceeding in any court or tribunal of the state, except in those cases where the rights of appropriation thereby described have been abandoned subsequent to the issuance of the certificate."

ORS 537.270.

With that background in mind, we return to the mootness question presented in this case. A case is moot if a decision by the court "no longer will have a practical effect on or concerning the rights of the parties." *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993). "For example, a case becomes moot when an event occurs that 'render[s] it impossible for the court to grant effectual relief.'" *Hamel*, 330 Or at 184 (quoting *Greyhound Park v. Ore. Racing Com.*, 215 Or 76, 79, 332 P2d 634 (1958)) (brackets in *Hamel*). The party that seeks dismissal—here, respondents—has the burden to establish that the case is moot. *Brumnett*, 315 Or at 407.

---

[11] ORS 537.260(3) provides, among other things, that the owner of an application, permit, or water-right certificate that is "subsequent in priority" may contest the issuance of a water-right certificate up to three months after its issuance. In that instance, the department may cancel the certificate or affirm its issuance; if the former, the permit on which it is based shall also be canceled.

In that regard, the city argues that, because petitioners did not petition within the requisite time period for judicial review of the department's final order issuing the water-right certificate, the city's water right described in the permit "is now inviolate and eternal, subject only to revocation for the reasons set forth in ORS 537.250," which are inapplicable here. Thus, in the city's view, even if we were to determine that the permit extension was issued in error and grant petitioner the relief that it seeks—that is, reversal and remand of the final order extending the permit—there is no legal mechanism for the department to withdraw or modify the certificate and, consequently, there is no effective relief that can be granted in this case. In short, the city asserts, "The Final Order may have allowed the Certificate to be issued, but reversing the Final Order cannot have any [effect] on the Certificate after the fact."[12]

In response, petitioner incorporates its response to respondents' motion to dismiss before the Appellate Commissioner, in which it contended, among other things, that, because the department's legal authority to issue the certificate depends on the validity of its order granting an extension of time for the city to perfect the underlying water permit—the order that is being challenged on judicial review—the judicial review proceeding is not moot. Moreover, petitioner argued, "if Petitioner prevails, then the Final Order *and* the certificate are both unlawful and should be withdrawn or modified to correct the deficiencies." (Emphasis in original.) Petitioner also points out that it had no means by which to challenge the issuance of the certificate because "no notice of [the certificate's] issuance was required nor made."

We agree with petitioner that the case is not moot. Although the analogy to *Hamel* is imperfect, it nonetheless is instructive. In *Hamel*, the petitioner brought a habeas corpus action challenging a January 1997 order of the Board of Parole and Post Prison Supervision (the board) postponing his scheduled parole release date from May 29, 1997, until May 29, 1999, on the ground that the board had applied the wrong version of the statute authorizing such

---

[12] The department and the Oregon Water Resources Commission adopt the arguments made by the city in its original motion to dismiss.

a postponement, thus violating federal and state *ex post facto* prohibitions. *Hamel*, 330 Or at 182-83. The trial court denied habeas corpus relief, and the petitioner appealed. However, while that appeal was pending, the board issued another order postponing the petitioner's scheduled parole release date—an October 1998 order that relied on information that was not available when the board issued its 1997 order. The respondent argued, and we agreed, that the 1998 order superseded the 1997 order, thus rendering moot the petitioner's appeal from the trial court's denial of his habeas petition challenging the 1997 order. We therefore dismissed the appeal. *Id.* at 184.

The Supreme Court reversed. The court explained that, under the parole matrix system under which the petitioner was sentenced, the board was *required* to release the petitioner on the initial parole release date set by the board, unless the board identified a valid reason for postponement. *Id.* at 187. Therefore, the court reasoned, if the board's reasons for postponing the petitioner's release date in the 1997 order were invalid, as the petitioner contended, he should have been released on his initial parole release date— May 29, 1997—and, if he had been, the board could not have issued its 1998 order.[13] Under those circumstances, the court held, the petitioner's appeal challenging the 1997 order did not become moot when the 1998 order issued. *Id.* at 188.[14]

So, too, under the circumstances presented here. That is, if the city had not been granted an extension of time, it would not have been able to perfect its water right under the permit, and, consequently, the department could not lawfully have issued a water-right certificate to the city. *See* ORS 537.211 (permit authorizes holder to take action necessary to apply the water to the designated beneficial use and perfect the water right); ORS 537.230(2) (extension

---

[13] Respondents contend that the distinguishing factor between this case and *Hamel* is that, in *Hamel*, "one order simply replaced another," whereas, here, the two orders are of a different type. The court's reasoning does not support that distinction.

[14] The court noted that it was of no import that the petitioner had also sought habeas corpus relief from the board's 1998 order. *Id.* at 184 n 4 ("Petitioner remains entitled to challenge the validity of any Board order that allegedly has resulted in his being held in prison unlawfully.").

of time to perfect water right under a permit for municipal use authorized in certain circumstances); ORS 537.250(1) (water-right certificate issued if permit holder demonstrates that "an appropriation has been perfected in accordance with the the provisions of the Water Rights Act"). In other words, if petitioner were to prevail in its argument on review that the department's order granting the permit extension was issued in error, a necessary predicate for the department's subsequent order issuing the water-right certificate—*perfection of the water right in accordance with the Act*—would also cease to exist.

We disagree with respondents that, due to the issuance of the certificate, no effective relief can be granted with respect to petitioner's challenge to the permit extension. As explained above, the department's extension order is a final order in a contested case, reviewed as provided in ORS 183.482, except as otherwise specified in ORS 536.075(4), (5), and (6) of the Water Rights Act. ORS 536.075(2), (3). Our decision on judicial review under ORS 183.482

"may be mandatory, prohibitory, or declaratory in form, and it shall provide whatever relief is appropriate irrespective of the original form of the petition. The court may:

"(a) Order agency action required by law, order agency exercise of discretion when required by law, set aside agency action, remand the case for further agency proceedings or decide the rights, privileges, obligations, requirements or procedures at issue between the parties; and

"(b) Order such ancillary relief as the court finds necessary to redress the effects of official action wrongfully taken or withheld."

ORS 183.486(1).

Nothing in ORS 536.075(4), (5), or (6) undercuts or affects the application of ORS 183.486 to this case—that is, nothing in those subsections indicates that ORS 183.486 is *not* intended to apply in this context. Indeed, subsection (6) of ORS 536.075 specifies that, on review,

"[t]he court may remand the case for further evidence taking, correction *or other necessary action*. The court may affirm, reverse, modify or supplement the order appealed

from, and *make such disposition of the case as the court determines to be appropriate."*

(Emphasis added.)

Subsection (5) provides, in turn, that—in contrast to ORS 183.482—the filing of a petition for judicial review of an order of the department stays enforcement of the order. ORS 536.075(5).[15] Thus, it is clear that the legislature intended to preserve our jurisdiction to review the merits of a final order of the department before its implementation. Reading ORS 537.250(3) and ORS 537.270 as respondents urge, notwithstanding the broad authority granted by the legislature under ORS 183.486 for us to "[o]rder such ancillary relief as the court finds necessary to redress the effects of official action wrongfully taken or withheld," would thwart that legislative intent. Specifically, it would allow the department to circumvent our ability to review the merits of one of its orders simply by (as occurred here) issuing a subsequent order—*one that is premised on the validity of the first order*—before a petition for review of the first order is filed but while the time allowed to file a petition is still pending.

That position is particularly untenable given that, under the statutory and administrative scheme at play here, it is unclear how petitioner would have been in a position to challenge the department's subsequent order. Even assuming that petitioner—although not formally a "party" to the certificate issuance—had a right to judicial review of that action, *see* ORS 536.075(1) (providing appeal rights for any "party" affected by a final order issued by the department in an other than contested case); *Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 238 P3d 395 (2010) ("party" as used in ORS 536.075(1) must be understood to refer to "persons" because there was no proceeding to which the petitioners—a homeowners association and local residents—could have become formal parties), we are aware of

---

[15] Specifically, ORS 536.075(5) provides that filing a petition stays enforcement of the order unless the department determines, in writing, that "substantial public harm will result." In contrast, ORS 183.482(3)(a) requires a petitioner to make a showing of "[i]rreparable injury to the petitioner" and "[a] colorable claim of error in the order" in order for the filing of a petition to stay enforcement of the order.

no process (and respondents do not suggest otherwise) by which petitioner, who, again, was not a "party" to the order, would have received notice of the issuance of the water-right certificate in order to timely submit such a challenge. *See* ORS 536.075(1) (petition for judicial review of final order in other than contested case issued by the department must be filed within the time specified by ORS 183.484(2)); ORS 183.484(2) (timeline for filing petition for judicial review of order in other than a contested case based on date order is mailed or delivered to a "party"). Unlike with respect to the department's action on the permit itself, *see* ORS 537.153(4), or on an application for a time extension for the permit, *see* OAR 690-315-0050(3), the department is not required to publish notice of a final order issuing a water-right certificate in its weekly public notice or otherwise provide notice to people who have requested such notice.[16] *Cf. Wilber v. Wheeler*, 273 Or 855, 864, 543 P2d 1052 (1975) (under ORS 537.270, the holder of a water-right certificate is bound by its terms after the statutory period to challenge the certificate has elapsed, because the holder, unlike an owner of a prior water right, receives a copy of the certificate and thus has notice of its terms).

Given those circumstances, we do not understand ORS 537.250(3) or ORS 537.270 to prevent us from exercising our remedial authority under ORS 183.486 to instruct the department to vacate the city's water-right certificate if we determine, on judicial review, that an order on which the certificate was predicated was issued in error.[17] Thus,

---

[16] Petitioner asserts in a footnote in its response to respondents' motion to dismiss the petition as moot that, on July 26, 2011, the department began providing public notice of the issuance of water-right certificates in its weekly public notice of water-use requests, which, of course, was long past the deadline to challenge the certificate in this case. The department has not identified any statute or rule that required the department—then or now—to provide such notice, and we are not aware of any.

[17] Moreover, contrary to respondents' contention otherwise, a certificate's conclusiveness under ORS 537.270 is not absolute. Rather, by its terms, ORS 537.270 renders a certificate issued in accordance with ORS 537.250 "conclusive evidence of *the priority and extent of the appropriation*" described in the certificate. (Emphasis added.) *See also Wilber*, 273 Or at 864 ("Since the owner of a prior water right receives no notice of the issuance of a subsequent certificate and is not granted any opportunity to contest its validity, it seems clear that his prior vested rights cannot be impaired by the issuance of subsequent certificates."); *Cleaver v. Judd*, 238 Or 266, 270, 393 P2d 193 (1964) ("It is apparent that ORS

under these circumstances, we conclude that the case is not moot. That is, our ability to review a challenge to the department's extension order is not rendered moot by the department's subsequent issuance of the water-right certificate because the certificate issued before the time for petitioner to seek judicial review of the extension order had expired, the department's authority to issue the certificate was predicated on the legality of the extension order, and petitioner had no practical ability to seek judicial review of the certificate.

We turn to the merits. As noted, ORS 537.230(2), as pertinent, allows the department to "order and allow an extension of time *to complete construction or to perfect a water right* beyond the time specified in the permit" (emphasis added) if the permit holder "shows good cause" (subsection (a)), and

> "(b)  [T]he extension of time is conditioned to provide that the holder may divert water beyond the maximum rate diverted for beneficial use *before the extension* only upon approval by the department of a water management and conservation plan; and

> "(c)  For the first extension issued after June 29, 2005, for a permit for municipal use issued before November 2, 1998, the department finds that *the undeveloped portion of the permit* is conditioned to maintain, in the portions of waterways affected by water use under the permit, the persistence of fish species listed as sensitive, threatened or endangered under state or federal law."

(Emphasis added.) The department, in turn, adopted a rule defining "undeveloped portion of the permit" to mean

> "the portion of the permit that is the difference between the maximum rate, or duty if applicable, specified in the permit

---

537.270, read together with 537.260, was intended to make a water right certificate conclusive only against a person whose water right was 'subsequent in priority.' ORS 537.270 does not purport to foreclose the interest of an owner whose water right originated prior to that claimed by a subsequent certificate holder."). *Cf. Kerivan v. Water Resources Commission*, 188 Or App 491, 502, 72 P3d 659 (2003), *rev den*, 336 Or 376 (2004) (petitioners had the opportunity and obligation to challenge the validity of water rights subject to transfer at the time the transfer request was made; thus, the new water-right certificates issued by the department were "'conclusive evidence of the priority and extent of the appropriation therein'" (quoting ORS 537.270)).

and the maximum rate, or duty if applicable, diverted for beneficial use *before the extension*[.]"

OAR 690-315-0010(g) (emphasis added); *see also* OAR 690-315-0080(1)(f); OAR 690-315-0090(3).

Interpreting those provisions in this case, the department concluded that, because the city had—*at the time the department granted the city's extension application*—diverted the full rate of water allowed under the permit,[18] there was no undeveloped portion of the permit, and, consequently, the conditions in ORS 537.230(2)(b) and (c) did not apply.

On review, petitioner's three assignments of error reduce to the contention that the department's final order erroneously interprets ORS 537.230(2)—specifically, that the department erred in measuring whether there was an "undeveloped portion of the permit," ORS 537.230(2)(c), and whether the maximum rate of water had been "diverted for beneficial use before the extension," ORS 537.230(2)(b), as of the time the extension request was granted. As a result, petitioner contends, the department erred in failing to condition the permit to provide for the protection of certain fish species as required under ORS 537.230(2)(c) and to require the approval of a water management and conservation plan as required under ORS 537.230(2)(b).

We review the department's interpretation of the statute in this case for legal error. ORS 183.482(8)(a); *Springfield Education Assn v. Springfield School Dist. No. 19*, 290 Or 217, 227, 621 P2d 547 (1980). Our task is to determine whether the department's interpretation of the statute, as reflected in the final order, effectuates the legislative policy judgment expressed in the statute. *Springfield Education Assn*, 290 Or at 228 ("If the agency interpretation is embodied in a rule, and the rule is otherwise lawful, the rule will be upheld on judicial review of either the rule or any order

---

[18] Specifically, the department found that, on July 10, 2008, over a period of six hours, the city diverted 6.2 cubic feet per second of water—the maximum amount specified in the permit. As noted, petitioner does not contend that that finding is not supported by substantial evidence in the record. ORS 183.482(8)(c).

based upon the rule, if the interpretation can be determined to be within the statutory intent, but not otherwise.").[19]

Petitioner argues that the "undeveloped portion of the permit" in subsection (2)(c) must be understood to mean that portion of the construction of water works or the application of water to beneficial use that is outside the bounds of the permit or a previous extension of the permit, *viz.*, the portion of the permit for which the extension is needed in order to perfect the right. Thus, in petitioner's view, the measuring point for determining the portion of a permit that is "undeveloped"—thus triggering fish protection (subsection (2)(c))—and the "maximum rate diverted for beneficial use before the extension"—thus requiring a water management and conservation plan (subsection (2)(b))—must be the expiration of the deadlines specified in the original permit or in the last-issued extension for completing construction or perfecting the water right. In this case, that point was October 1, 1999, and, as of that date, not all of the water under the permit had been applied to beneficial use; therefore, according to petitioner, the department erred in not conditioning the extension as required in subsections (2)(b) and (c).

Respondents, on the other hand, contend that the text, context, and legislative history support the department's interpretation and application of the statute and that petitioner's contrary reading would require inserting words into the statute. *See* ORS 174.010 (in interpreting a statute, the court "is not to insert what has been omitted"). Respondents argue that, under the statutory scheme, a permitee may continue to "develop" the permit after expiration of the development deadlines specified in the permit or a previously issued extension—*viz.*, as the department contends, "water may be put to beneficial use outside a permit's development deadline, so long as an extension amending that deadline is approved prior to a final proof survey and issuance of a

---

[19] We defer to an agency's plausible interpretation of its own rule—including an interpretation made in the course of applying it—unless it is inconsistent with the wording or context of the rule or with any other source of law. *Don't Waste Oregon Com. v. Energy Facility Siting Council*, 320 Or 132, 142, 881 P2d 119 (1994); *Papas v. OLCC*, 213 Or App 369, 377, 161 P3d 948 (2007). Here, we understand petitioner to contend, at least in part, that the agency's interpretation of OAR 690-315-0010(g), even if plausible, is inconsistent with ORS 537.230(2).

certificate." Thus, respondents contend, the department did not err in determining that there was no undeveloped portion of the permit for purposes of ORS 537.230(2) because the maximum rate of water authorized in the permit had been applied to beneficial use at the time the extension was approved.

Although this is a close case, based on a contextual reading of the statute and the legislative history, we conclude that petitioner has the better view.

We begin with the text. ORS 537.230(2) provides, in full, as follows:

"The holder of a permit for municipal use shall commence and complete the construction of any proposed works within 20 years from the date on which a permit for municipal use is issued under ORS 537.211. The construction must proceed with reasonable diligence and be completed within the time specified in the permit, not to exceed 20 years. *However, the department may order and allow an extension of time to complete construction or to perfect a water right beyond the time specified in the permit under the following conditions*:

"(a)   The holder shows good cause. In determining the extension, the department shall give due weight to the considerations described under ORS 539.010(5) and to whether other governmental requirements relating to the project have significantly delayed completion of construction or perfection of the right;

"(b)   *The extension* of time is conditioned to provide that the holder may divert water beyond the maximum rate diverted for beneficial use *before the extension* only upon approval by the department of a water management and conservation plan; and

"(c)   For *the first extension* issued after June 29, 2005, for a permit for municipal use issued before November 2, 1998, the department finds that *the undeveloped portion of the permit* is conditioned to maintain, in the portions of waterways affected by water use under the permit, the persistence of fish species listed as sensitive, threatened or endangered under state or federal law. The department shall base its finding on existing data and upon the advice of the State Department of Fish and Wildlife. An existing

fish protection agreement between the permit holder and a state or federal agency that includes conditions to maintain the persistence of any listed fish species in the affected portion of the waterway is conclusive for purposes of the finding."

(Emphasis added.)

As petitioner points out, subsection (2)(c) refers to the "undeveloped portion of the *permit*," not the undeveloped (or undiverted) portion of the *water*. Under ORS 537.211(1), the permit "specif[ies] the details of the authorized use" and "set[s] forth any terms, limitations and conditions," including, as specified in ORS 537.230(2), the time requirement for completing construction and perfecting the right. Thus, the *"extension"* referred to in subsections (2)(b) and (c) is the continuation of that authority—that is, the authority under the permit to complete construction and perfect the right. ORS 537.250(1); *Teel*, 323 Or at 667 ("The permit itself does not represent a perfected and vested water right. The water right is perfected when the water actually is put fully to a beneficial use." (Citation omitted.)); *id*. at 668 ("Once the department finds, based on the final proof survey, that the permittee has appropriated the water for a beneficial use in accordance with the law, the department issues a water right certificate to the user."); *see also* OAR 690-014-0100(2) (claim of beneficial use requesting water-right certificate requires a certified water-right examiner to "provide the Department with sufficient information for the Director to determine the extent of beneficial use developed within the conditions or limits of the permit or transfer final order, including any specified development time limits"). In other words, a permit cannot be *developed* for purposes of the statute without regard to the permit conditions prescribing the deadlines for completion. All of that suggests that the inquiry whether a permit has been fully developed does not pertain to the construction of water works or the application of water to beneficial use *per se*, but to the construction or application of water to beneficial use under the terms of the permit.

As mentioned, respondents contend that the statutory scheme does not prohibit a city from taking action, such

as applying water to a beneficial use, after the expiration of development deadlines in the permit—only that it cannot "perfect" its right under those circumstances—and that it can essentially "cure" an expired development deadline by applying for an extension of time under ORS 537.230(2) before obtaining a water-right certificate. Respectfully, that misses the point. The question is not whether a city can take such action, but whether that action constitutes *development of the permit*. We agree with petitioner that it does not. Rather, reading the statute in the context of the water-permitting scheme as we must indicates that the state of development of the permit must be measured by reference to the terms of the permit itself, which leads logically to the conclusion that the undeveloped portion is that portion for which the permit extension is needed.

As support for their contrary position, respondents point out that subsection (2)(c) of the statute "expressly relates to preserving 'the persistence of fish species' in 'the portions of waterways affected by water use under the permit[,]'" contending that this evidences the legislature's intention that the "undeveloped portion" means the portion of water not yet diverted when the new permit extension is issued. We disagree. The statute does not simply refer to fish in the portions of waterway affected by water use, but fish in the portions affected by water use "under the permit." Similarly, we are not persuaded that subsection (2)(c)'s requirement that the department base its finding regarding fish persistence on "*existing* data" has any bearing on the timing dispute here; rather, it simply indicates the legislature's intent that new *data* not be required in assessing whether the permit is properly conditioned.

We turn to the legislative history. The legislature amended ORS 537.230 in 2005, following our decision in *WaterWatch v. Water Resources Commission*, 193 Or App 87, 88 P3d 327 (2004), *vacated and remanded*, 339 Or 275, 119 P3d 221 (2005). *See* HB 3038 (2005); Or Laws 2005, ch 410, § 1. In *WaterWatch*, we held that the then-existing version of ORS 537.230(1), which required that the construction of a proposed water work be completed not later than five years from the date of approval of the permit, applied to municipal

water-use permits.[20] Thus, we held, a water-right permit had been improperly issued to the Coos Bay North Bend Water Board because the record showed that construction would not be begun during the first five years of the permit.[21] 193 Or App at 113.

According to the department, that decision was contrary to its long-standing interpretation and application of the statute, in which it granted permits and allowed multiple extensions of time with the understanding that the construction requirement did not apply to municipal water-use permits, and thus raised concerns about the viability of existing municipal permits and the ability of municipalities to plan for future water supply. House Bill (HB) 3038 (2005) was introduced in the next legislative session to address those concerns. Testimony, Senate Committee on Environment and Land Use, HB 3038, May 19, 2005, Ex I (statement of Adam Sussman, Water Resources Department).

HB 3038 established a separate statutory timeline of 20 years to commence and complete construction under a new municipal water-use permit. Or Laws 2005, ch 410, §§ 1, 5(1). As it passed the House, the bill also authorized the department to allow extensions of time for a permitee to "complete construction or to perfect a water right" beyond the time stated in the permit under specified conditions. HB 3038, § 1 (A-Engrossed). Those conditions required (1) that the holder of the permit "show[] good cause" and (2) that the extension be conditioned to allow for the diversion of water "beyond the maximum rate diverted for beneficial use before the extension" only upon approval of a water management and conservation plan. *Id.* Those two conditions remained in the bill at enactment—becoming ORS 537.230(2)(a) and (b)— although the "good cause" standard was further developed in the Senate to require (as in the previous version of the

---

[20] Although, at the time, ORS 537.230(2) also permitted an extension of time beyond the five-year limit for good cause shown, we concluded in *WaterWatch* that that provision applied only after the permit had been issued and delays had occurred; therefore, it could not operate to authorize the permit at issue in the case. 193 Or App at 109.

[21] The Supreme Court later vacated and remanded our decision, concluding that passage of HB 3038 "may foreclose judicial review in this case." *WaterWatch v. Water Resources Commission*, 339 Or 275, 279, 119 P3d 221 (2005).

statute) that the department "give due weight" in making that determination to certain statutory considerations and to "whether other governmental requirements relating to the project have significantly delayed completion of construction or perfection of the right." HB 3038, § 1 (Enrolled); Or Laws 2005, ch 410, § 1.

The final condition—what eventually became subsection (2)(c) of ORS 537.230—was added to the bill by the Senate Committee on Environment and Land Use, *see* Senate Amendments to A-Engrossed House Bill, HB 3038, June 13, 2005, § 1, and represented a compromise between WaterWatch, the department, and representatives of municipal water suppliers, including the League of Oregon Cities. Testimony, Senate Committee on Environment and Land Use, HB 3038, June 2, 2005, Ex M (statement of Doug Meyers, WaterWatch of Oregon). WaterWatch had opposed the bill in the House and, at a public hearing on the bill before the Senate Committee, proposed adding the following conditions to ORS 537.230(2):

> "(c)  The amount of water that may be diverted pursuant to the extension is conditioned to require a finding by the department that any incremental water conservation measures in the approved water management and conservation plan of the permit holder have been met or will be achieved within the time allowed in the plan, prior to the water being put to beneficial use; and
>
> "(d)  The extension will not impair or be detrimental to the public interest in protecting stream flows needed for fish, wildlife and other in-stream uses of the affected water bodies."[22]

Senate Committee on Environment and Land Use, HB 3038, May 19, 2005, Ex K (proposed "-A5" amendments to A-Engrossed House Bill). A representative of WaterWatch explained:

> "The criteria for granting extensions should require an updated evaluation of whether development of the permit would unreasonably impair the public interest in fish, wildlife and recreation. The public interest analysis done when

---

[22] WaterWatch also proposed a 10-year limit on the initial development period under the permit and the same limit on any extension.

the permit was initially issued can no longer be considered reliable after the initial development period has passed."

Testimony, Senate Committee on Environment and Land Use, HB 3038, May 19, 2005, Ex J (statement of Brian Posewitz, WaterWatch of Oregon). Those amendments were *not* adopted, and negotiations continued between WaterWatch, the department, and municipal water suppliers. At the work session on the bill on June 2, the existing text of subsection (2)(c) was presented as a compromise, and WaterWatch withdrew its opposition to the bill. Testimony, Senate Committee on Environment and Land Use, HB 3038, June 2, 2005, Ex M (statement of Doug Meyers); *id.* at Ex L (proposed "-A7" amendments to A-Engrossed House Bill).

WaterWatch presented testimony that, although "less than ideal," the amendments "at least explicitly require some consideration of environmental impacts before extending the time to develop a municipal appropriation permit issued before November 2, 1998," and require the department "to deny extensions of such permits unless the extensions are conditioned to maintain populations of fish listed as sensitive, threatened, or endangered under state or federal law." Testimony, Senate Committee on Environment and Land Use, HB 3038, June 2, 2005, Ex M (statement of Doug Meyers). Emphasizing its support for subsection (2)(c), Meyers, on behalf of WaterWatch, explained that it "requires the department to consult with [the Oregon Department of Fish and Wildlife] and requires the decision to be based on all existing data which can be brought forward in the existing agency process that allows public participation in extension proceedings." Tape Recording, Senate Committee on Environment and Land Use, HB 3038, June 2, 2005, Tape 105, Side B (statement of Doug Meyers).

Also speaking to the compromise, Adam Sussman for the department testified that subsection (2)(c) was designed to provide a "resource protection baseline" to "ensure that the undeveloped portion" of the permit would maintain fish persistence. Tape Recording, Senate Committee on Environment and Land Use, HB 3038, June 2, 2005, Tape 105, Side B (statement of Adam Sussman). The amendments were

adopted, and the bill was ultimately enacted as amended by the Senate Committee.[23] In a statement on the Senate floor, the carrier of the bill described the concerns initially raised by WaterWatch and explained:

> "There was a work group that met to put together a compromise on this that was a good meeting in terms of protecting the interests of the cities on their water rights but also ensuring that consideration would include the interest of the in-stream water and how that might [affect] recreation and fish."

Audio Recording, Senate Floor Debate, HB 3038, June 15, 2005, at 40:20 (statement of Sen Ringo), http://www.leg.state. or.us/listn/archive/archive.2005s/SENATE-200506151029. ram (accessed Dec 4, 2013).

Thus, although the specific timing question at issue here was not directly addressed in public hearings on the bill, the legislative history of the bill is clear that its purpose was to allow municipal users additional time—beyond that specified in the permit or a previous extension—to perfect their water right, while at the same time ensuring the protection of public resources and meaningful public participation in extension proceedings. The department's construction of the statute would thwart that purpose by allowing municipalities to circumvent the requirements for fish protection and approval of a water management and conservation plan simply by completing construction and applying the full amount of water allowed under the permit to the use *before* applying for an extension of the permit.[24]

---

[23] The amendments apply to requests for extensions of time made before, on, or after the effective date of the act, regardless of whether construction was commenced before the request. Or Laws 2005, ch 410, § 5(2).

[24] Of course, by doing so, a municipality would risk cancellation of the permit in the meantime, *see* ORS 537.260(1) (department *may* order cancellation of a permit when the permit owner fails or refuses, within three months after the time for perfection has expired, to submit to the department proof of completion of the appropriation); OAR 690-014-0190 (requiring the department to initiate cancellation proceedings if a claim of beneficial use is not submitted "within one year after the use was reported to the Department as being complete or the beneficial use date allowed in the permit * * *, whichever occurs first"), or denial of the extension request, when it is finally made, for lack of "good cause," *see* ORS 537.230(2)(a). However, the years-long moratorium on the acceptance of extension applications by municipalities makes it difficult to assess those risks and their effect on municipalities.

The text, context, and legislative history of ORS 537.230(2) indicate that the "undeveloped portion of the permit" is to be measured by reference to the maximum rate of water applied to beneficial use before the expiration of the development deadline in the permit or last-issued extension.[25] Thus, the department's interpretation of ORS 537.230(2)—and consequent failure to condition the permit extension as required in ORS 537.230(2)(b) and (c)—is inconsistent with the legislature's intention. Accordingly, we reverse and remand with instructions to the department to vacate the city's water-right certificate and to reconsider the city's permit-extension request in accordance with this opinion.

Reversed and remanded with instructions to vacate The City of Cottage Grove's water-right certificate and to reconsider The City of Cottage Grove's permit-extension request in accordance with this opinion.

---

[25] *Amici* argue, among other things, that that interpretation will require many municipalities, like Cottage Grove here, that had continued to increase their water usage and make large public investments in water supply infrastructure despite the expiration of the development deadlines in their permits, to "cease using any water developed after the expiration of their last permit until they secure [department] approval of [water management and conservation plans] for this water." They also argue that municipalities "would be prohibited from increasing their water use" while their extension applications are being considered by the department, causing "[g]rowth in these municipalities [to] essentially halt for lack of water." Neither of those results is compelled by this opinion. That is, nothing in this opinion requires a city to cease using water that has been applied to beneficial use after its permit has expired or prohibits a city from increasing its water use pending departmental approval of an extension application. We hold only that those actions are not considered "development" for purposes of ORS 537.230(2)(c) and do not occur "before the extension" for purposes of ORS 537.230(2)(b). We express no opinion as to whether such actions would otherwise be prohibited under the Water Rights Act, a question that is not before us.